[Cite as *Cantlin v. Smythe Cramer Co.*, 2016-Ohio-3174.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103339**

## PATRICK W. CANTLIN, ET AL.

PLAINTIFFS-APPELLEES

vs.

## SMYTHE CRAMER CO.

DEFENDANT-APPELLANT

**JUDGMENT:**
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-12-790865

**BEFORE:** E.T. Gallagher, P.J., Laster Mays, J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** May 26, 2016

**ATTORNEYS FOR APPELLANT**

Anthony J. Coyne
Jeffrey M. Embleton
Tracey S. McGurk
Mansour, Gavin, Gerlack & Manos Co., L.P.A.
North Point Tower
1001 Lakeside Avenue, Suite 1400
Cleveland, Ohio 44114

Jennifer M. Keas
Jay N. Varon
Foley & Lardner, L.L.P.
3000 K. Street N.W.
Washington, DC 20007


**ATTORNEYS FOR APPELLEES**

James A. DeRoche
Garson Johnson, L.L.C.
1600 Midland Building
101 West Prospect Avenue
Cleveland, Ohio 44115

Glenn D. Feagan
Law Offices of Glenn D. Feagan
614 West Superior Avenue
Suite 1410
Cleveland, Ohio 44113

James S. Timmerberg
Patrick J. Perotti
Nicole T. Fiorelli
Dworken & Bernstein Co., L.P.A.
60 South Park Place
Painesville, Ohio 44077

EILEEN T. GALLAGHER, P.J.:

{¶1} Defendant-appellant, Smythe Cramer Co., doing business as Howard Hanna Smythe Cramer ("HHSC"), challenges the trial court's order certifying a class in favor of plaintiffs-appellees, Patrick Cantlin, et al. ("collectively "plaintiffs"). HHSC brings the following assignment of error:

> 1. The trial court plainly abused its discretion in ruling that plaintiffs-appellees' claims of fraud, fraud in the inducement, and unjust enrichment may be maintained as a class action under Civ.R. 23(B)(3).

{¶2} After careful review of the record and relevant case law, we reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

## I. Factual History

{¶3} HHSC provides real estate brokerage services to buyers and sellers of real estate. Relevant to this appeal, HHSC provided real estate brokerage services to each of the named plaintiffs in this case.

## A. The Cantlin-Hong Transaction

{¶4} Plaintiffs Patrick Cantlin and Elizabeth Hong ("Cantlin-Hong") were buyers who purchased a home jointly in 2009. Cantlin-Hong signed a purchase agreement for a purchase price of $196,000. The purchase agreement provided that the seller would pay a "brokerage commission of seven percent (7%) of the sales price and $225 to [HHSC]." It further provided that "BUYER shall pay * * * a fee of $225.00 to [HHSC] for

brokerage services rendered to the BUYER." The Cantlin-Hong purchase closed in August 2009. The closing was conducted by Nova Title Agency, Inc., who prepared the U.S. Department of Housing and Urban Development Settlement Statement (the "HUD-1"). The $225 charge to Cantlin-Hong is listed on line 704 of the HUD-1 statement as an "administrative fee."

## B. The Noall Transaction

{¶5} Plaintiff Rita Noall ("Noall") was a buyer who purchased a home in 2009. She too signed a purchase agreement obligating her to pay HHSC a $225 "administrative fee." The Noall purchase closed in July 2009. The closing was conducted by Prism Title & Closing Services, Ltd., who prepared the HUD-1. Line 705 of Noall's HUD-1 lists the $225 charge as an "admin. fee."

{¶6} During the course of her transaction, Noall complained about her lender's failure to produce financing on time, which caused her to incur penalties of $30 per day. Ultimately, HHSC provided Noall with a check for $200 to cover the penalties. In exchange, Noall executed a "General Release of Claims," releasing all "buyers, realtors, and [HHSC] * * * from any and all claims * * * whether known or unknown, that were or could have been raised in relation to the property."

## C. The Miller Transaction

{¶7} Plaintiff Cindy Miller ("Miller") was a seller. She signed an exclusive right to sell agreement with HHSC. Under the agreement, Miller agreed to pay HHSC "a commission of seven percent (7%) of the 1st $100k and 5% on balance" of the sales

price. She also agreed to pay an administrative fee of $225. The obligation to pay the administrative fee is also included in the purchase agreement to sell Miller's house. The Miller sale closed in September 2009. The closing was conducted by Barristers of Ohio, L.L.C. The $225 charge is listed on line 705 of Miller's HUD-1 statement as a "broker service fee."

## II. Procedural History

{¶8} In September 2012, plaintiffs filed a class action complaint against HHSC, alleging fraud, unjust enrichment, and fraudulent inducement. In their complaint, plaintiffs allege that "a class action is appropriate and necessary because [HHSC] has engaged in widespread fraud by an identical practice uniformly against its customers by charging them a sham fee for which no services are provided, titled 'administrative fee,' 'regulatory compliance fee,' or 'broker service fee.'" They argue that "by including the administrative fee on the HUD-1 as a separate item, [HHSC] misrepresents to consumers that the administrative fee is paid in exchange for services separate and apart from the commission percentage. But no separate services were actually provided in exchange for the administrative fee." Thus, plaintiffs contend that the members of the proposed class were charged two separate fees for exactly the same service.

{¶9} Plaintiffs suggest "[HHSC]'s purpose in implementing the administrative fee was to avoid the public perception that it was increasing its commission rates, while at the same time pocketing additional funds from customers for services already charged."

They argue that the fees already paid must be disgorged and returned to the putative class members.

{¶10} In July 2013, plaintiffs filed a motion for class certification asking the trial court to certify the following class:

> All individuals: (1) in the state of Ohio; (2) from September 18, 2005 to the present; (3) who paid to Defendant a fee entitled "administrative fee," "broker service fee," "brokerage fee," or other similar title, which fee is usually listed on line 704 or 705 of the HUD-1.

{¶11} HHSC opposed class certification, arguing plaintiffs failed to meet their burden of proof on the rigorous requirements of Civ.R. 23. In July 2015, the trial court issued a decision, granting plaintiffs' motion for class certification.

{¶12} HHSC now appeals from the certification of the class.

### III. Law and Analysis

### A. Class Certification

{¶13} In its sole assignment of error, HHSC argues the trial court abused its discretion in certifying the class.

{¶14} A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only," *Califano v. Yamasaki*, 442 U.S. 682, 700-701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979), and "[t]o come within the exception, a party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23." *Comcast Corp. v. Behrend*, 569 U.S. ___, 133 S.Ct. 1426,

1432, 185 L.Ed.2d 515 (2013), quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 390, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011).[1]

{¶15} "A trial judge has broad discretion in determining whether a class action may be maintained and that determination will not be disturbed absent a showing of an abuse of discretion." *Marks v. C.P. Chem. Co., Inc.*, 31 Ohio St.3d 200, 509 N.E.2d 1249 (1987), syllabus. We apply the abuse of discretion standard in reviewing class action determinations to give deference to "the trial court's special expertise and familiarity with case-management problems and its inherent power to manage its own docket." *Id.* at 201.

{¶16} Nevertheless, "the trial court's discretion in deciding whether to certify a class action is not unlimited, and indeed is bounded by and must be exercised within the framework of Civ.R. 23." *Hamilton v. Ohio Sav. Bank,* 82 Ohio St.3d 67, 70, 694 N.E.2d 442 (1998). The trial court may only certify a class if it finds, after a rigorous analysis, that the moving party has demonstrated that all the factual and legal prerequisites to class certification have been satisfied. *Id.*

{¶17} In *Ojalvo v. Bd. of Trustees of Ohio State Univ.*, 12 Ohio St.3d 230, 466 N.E.2d 875 (1984), the Ohio Supreme Court stated, "[c]lass action certification does not go to the merits of the action." *Id.* at 233. However, deciding whether a claimant meets

---

[1] The Ohio Supreme Court has held that because Civ.R. 23 is virtually identical to Fed.R.Civ.P. 23, "federal authority is an appropriate aid to interpretation of the Ohio rule." *State ex rel. Davis v. Pub. Emps. Ret. Bd.*, 111 Ohio St.3d 118, 2006-Ohio-5339, 855 N.E.2d 444, ¶ 28, citing *Marks v. C.P. Chem. Co., Inc.*, 31 Ohio St.3d 200, 201, 509 N.E.2d 1249 (1987).

the burden for class certification pursuant to Civ.R. 23 requires the court to consider what will have to be proved at trial and whether those matters can be presented by common proof. 7AA Wright, Miller & Kane, *Federal Practice and Procedure*, Section 1785 (3d Ed.2005). Thus, in resolving a factual dispute when a requirement of Civ.R. 23 for class certification and a merit issue overlap, a trial court is permitted to examine the underlying merits of the claim as part of its rigorous analysis, but only to the extent necessary to determine whether the requirement of the rule is satisfied. *Wal-Mart*, 564 U.S. 338,131 S.Ct. 2541, 180 L.Ed.2d 374 (2011); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir.2011).

{¶18} Civ.R. 23 provides seven requirements for maintaining a class action:

(1) an identifiable class must exist and the definition of the class must be unambiguous; (2) the named representatives must be members of the class; (3) the class must be so numerous that joinder of all members is impracticable; (4) there must be questions of law or fact common to the class; (5) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; (6) the representative parties must fairly and adequately protect the interests of the class; and (7) one of the three Civ.R. 23(B) requirements must be met.

*Stammco, L.L.C. v. United Tel. Co. of Ohio*, 125 Ohio St.3d 91, 2010-Ohio-1042, 926 N.E.2d 292, ¶ 6, quoting *Hamilton*, 82 Ohio St.3d 67, 71, 694 N.E.2d 442, citing Civ.R. 23(A) and (B) and *Warner v. Waste Mgt.*, 36 Ohio St.3d 91, 521 N.E.2d 1091 (1988).

{¶19} In this case, it is not necessary to review all seven of the class certification requirements. HHSC does not contest the trial court's findings regarding the existence of a class representative, numerosity, commonality, or the adequacy of representation by class counsel. Rather, HHSC challenges the trial court's findings regarding the existence of an identifiable class, the typicality

requirement of Civ.R. 23(A)(3), and the predominance requirements of Civ.R. 23(B)(3). For the purposes of judicial clarity, we begin our analysis with the predominance requirements of Civ.R. 23(B)(3).

## B. Civ.R. 23(B)(3) – Predominance

**{¶20}** Civ.R. 23(B)(3) permits maintenance of a class action where:

the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**{¶21}** Certification pursuant to Civ.R. 23(B)(3) requires the trial court to make two findings (1) "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and (2) "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." This inquiry requires a court to balance questions common among class members with any dissimilarities between them, and if the court is satisfied that common questions predominate, it then should "consider whether any alternative methods exist for resolving the controversy and whether the class action method is in fact superior." *Cullen v. State Farm Mut. Auto. Ins. Co.*, 137 Ohio St.3d 373, 2013-Ohio-4733, 999 N.E.3d 614, ¶ 29, quoting *Ealy v. Pinkerton Govt. Servs., Inc.*, 514 Fed.Appx. 299 (4th Cir.2013).

**{¶22}** "For common questions of law or fact to predominate, it is not sufficient that such questions merely exist; rather, they must represent a significant aspect of the case. Furthermore, they must be capable of resolution for all members in a single

adjudication." *Marks*, 31 Ohio St.3d at 204, 509 N.E.2d 1249. Where common issues predominate, the class members "will prevail or fail in unison." *Musial Offices, Ltd. v. Cty. of Cuyahoga*, 8th Dist. Cuyahoga No. 99781, 2014-Ohio-602, ¶ 32, quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 2\_\_\_, 133 S.Ct. 1184, 1196, 185 L.Ed.2d 308 (2013). Thus, in determining a motion for class certification, a court must consider what the plaintiffs will have to prove at trial and whether those matters can be presented by common proof. *See Cullen* at ¶ 17.

{¶23} In this case, the crux of plaintiffs' action is that members of the class were charged twice for the same services without their consent. As stated in the trial court's decision, plaintiffs' argue that "the [administrative] fee itself is a misrepresentation because by virtue of it being charged, it is implying that the plaintiffs are receiving a service when in fact they are not receiving anything in addition to what the percentage commission paid by the seller already covers."

{¶24} In arguing that they have met the predominance requirement of Civ.R. 23(B)(3), plaintiffs' maintain that "this is a classic case suitable for class wide determination" because their claims arise from standardized forms and routine procedures, including "uniform misrepresentations" and "written uniform deceit" in the HUD-1.

{¶25} Plaintiffs' rely on the Ohio Supreme Court's decision in *Cope v. Metro. Life Ins. Co.*, 82 Ohio St.3d 426, 696 N.E.2d 1001 (1998). In *Cope*, the plaintiffs alleged that an insurance company improperly targeted existing policyholders, sold them

replacement insurance as new insurance, and intentionally omitted mandatory disclosure warnings. Reviewing the merits of the class, the court reiterated that "[i]t is now well established that 'a claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position.'" *Id.* at 429-430, citing *Lockwood Motors, Inc. v. Gen. Motors Corp.*, 162 F.R.D. 569, 580 (D.Minn.1995).

**{¶26}** In certifying the class in that case, the Ohio Supreme Court reasoned that "a wide variety of claims may be established by common proof in cases involving similar form documents or the use of standardized procedures and practices." *Id.* at 430. The court explained

> [f]requently numerous consumers are exposed to the same dubious practice by the same seller so that proof of the prevalence of the practice as to one consumer would provide proof for all. Individual actions by each of the defrauded consumers are often impracticable because the amount of individual recovery would be insufficient to justify bringing a separate action; thus an unscrupulous seller retains the benefits of its wrongful conduct.

*Id.* at 429, quoting *Vasquez v. Superior Court of San Joaquin Cty.*, 4 Cal.3d 800, 808, 94 Cal.Rptr. 796, 484 P.2d 964 (1971).

**{¶27}** The high court went on to elucidate:

> [w]hen there is nondisclosure of a material fact, courts permit inferences or presumptions of inducement and reliance. Thus, cases involving common omissions across the entire class are generally certified as class actions, notwithstanding the need for each class member to prove these elements.

*Cope,* 82 Ohio St.3d 426, 436, 696 N.E.2d 1001.

**{¶28}** In this case, there is no dispute that the HUD-1 is a standardized form. In addition, the HUD-1 clearly indicates whether a prospective class member has or has not paid the challenged "administrative fee." However, we find the HUD-1, standing alone, does not constitute generalized evidence that proves or disproves the elements of fraud, fraud in the inducement, and unjust enrichment on "a simultaneous, class-wide basis." In other words, the fact that an individual's HUD-1 shows that he or she paid an "administrative fee" is not evidence that will determine whether the class members' fraud claims "will prevail or fail in unison." In our view, the circumstances presented in this case require us to consider the HUD-1 in conjunction with the HHSC purchase agreements signed by each prospective class member.

**{¶29}** In this case, Miller, Noall, and Cantlin-Hung entered into purchase agreements with HHSC. Each purchase agreement was signed by the class representatives and the corresponding property buyer or seller. In addition, each purchase agreement set forth the relevant charges the buyer and seller were obligated to pay through escrow and the terms of the commission received for HHSC real estate services. The relevant terms of each purchase agreement are as follows.

**{¶30}** In May 2009, Noall entered into a purchase agreement ("Purchase Agreement-A"), wherein she agreed, as the buyer, to pay, among other things, an "administrative fee" of $225 to HHSC. Within Purchase Agreement-A, the sellers agreed to pay the following fees through escrow:

(6).   the real estate commissions described in Section S to Howard Hanna; * * * and (8).   if Seller is represented by Howard Hanna, an Administrative Fee of $225.00 to Howard Hanna.

Section S of the purchase agreement states:

ACCEPTANCE: the undersigned SELLER hereby accepts the above offer and * * * agrees to have the Escrow Agent to pay, by irrevocable assignment from SELLER's proceeds of escrow to Howard Hanna a commission of [ ] % of the purchase price.

{¶31} In August 2009, Miller entered into a purchase agreement ("Purchase Agreement-B"), wherein she agreed, as seller, to pay the following fees through escrow:

* * *

f).   Real estate brokerage commissions as described in lines 295-299 below; and g).   if Seller is represented by Howard Hanna, an Administrative Fee of $225.00 to Howard Hanna.

Lines 295-299 of the purchase agreement state:

ACCEPTANCE: SELLER accepts the above offer and * * * hereby instructs the Escrow Agent to pay from SELLER's escrow funds a commission of 3.5/2.5% of the purchase price to Howard Hanna.

Within Purchase Agreement-B, the buyers agreed to pay, among other things, an "administrative fee" of $225 to HHSC.

{¶32} In June 2009, Cantlin-Hong entered into a purchase agreement, ("Purchase Agreement-C"), wherein they agreed, as buyers, to pay "a fee of $225.00 to Howard Hanna for brokerage services rendered to the BUYER."   Within Purchase Agreement-C, the sellers agreed to pay "real estate brokerage commissions as described in lines 299-303 below."   Lines 299-303 of Purchase Agreement-C state, in pertinent part:

ACCEPTANCE: SELLER accepts the above offer and * * * hereby instructs the Escrow Agent to pay from SELLER's escrow funds *a*

*brokerage commission of seven percent (7%) of the sales price and $225* to Howard Hanna Real Estate Services.

(Emphasis added.)

**{¶33}** Based on the foregoing language, it is evident that the purchase agreements entered into by Miller and Noall, while using varying language, required both the buyer and seller to pay an "administrative fee" in addition to the seller's obligation to pay a percentage-based commission. However, in contrast, the purchase agreement entered into by Cantlin-Hong specifically advises sellers that the "brokerage commission" consists of a percentage fee *and* a flat fee of $225. (Emphasis added.) Thus, those sellers signing this version of HHSC's purchase agreements were explicitly made aware that HHSC earned a hybrid commission fee, a circumstance that (1) is inconsistent with the claims alleged in plaintiffs' complaint, and (2) is not present in Purchase Agreements A or B. Under these circumstances, we are unable to conclude that the three versions of the purchase agreements signed by the class representatives were standard forms containing "uniform misrepresentations."

**{¶34}** The language contained in Purchase Agreement-C illustrates why the HUD-1, standing alone, does not constitute generalized proof that would determine whether the class members' claims "will prevail or fail in unison." As stated, plaintiffs' class is defined as:

> All individuals: (1) in the state of Ohio; (2) from September 18, 2005 to the present; (3) who paid to Defendant a fee entitled "administrative fee," "broker service fee," "brokerage fee," or other similar title, which fee is usually listed on line 704 or 705 of the HUD-1.

**{¶35}** We recognize that the seller in the Cantlin-Hong transaction is not a named plaintiff class representative in this matter. However, pursuant to the certified class definition, the seller in the Cantlin-Hong transaction would qualify as a class member because line 704 of her HUD-1 reflects that she paid an $189 "administrative fee." Thus, the seller in the Cantlin-Hong transaction would join the class in its allegations against HHSC for fraud, fraud in the inducement, and unjust enrichment despite the sellers express consent to a hybrid commission fee — a term in Purchase Agreement-C that cannot be characterized as a "non-disclosure" or "material omission," as alleged in the complaint.

**{¶36}** Because each purchase agreement presented in this case involved different language, this court has no basis to know which of the three versions predominates among the 10,000 prospective class members. Thus, this is not a case where common issues of proof predominate over individual defenses. Instead, the evidence supporting the allegations raised in plaintiffs' complaint would require the trier of fact to examine each class member's purchase agreement to determine whether an individual who paid an administrative fee, as shown in the HUD-1, consented to the hybrid commission rate in their purchase agreement. *See Schmidt v. Avco Corp.*, 15 Ohio St.3d 310, 314, 473 N.E.2d 822 (1984) ("Where the circumstances of each proposed class member need to be analyzed to prove the elements of the claim or defense, then individual issues would predominate and class certification would be inappropriate.").

**{¶37}** Based on the foregoing, we do not find *Cope* to be persuasive. The crucial distinction is that the evidence illustrates that the alleged fraudulent conduct was not standardized. *See Young v. FirstMerit Bank, N.A.*, 8th Dist. Cuyahoga No. 94913, 2011-Ohio-614, ¶ 32. There is no common misrepresentation or omission across the *entire* class. Accordingly, we conclude *as the class is currently defined*, this action does not satisfy the predominance requirement of Civ.R. 23(B)(3). HHSC's sole assignment of error is sustained.

## IV. Conclusion

**{¶38}** In sum, all of the requirements for certification of a class action have not been met. Consequently, we hold that the trial court abused its discretion in granting plaintiffs' motion for class certification. We sustain HHSC's sole assignment of error and reverse the trial court's judgment granting plaintiffs' motion and remand the cause to the trial court for further proceedings.

**{¶39}** Judgment is reversed and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant recover from appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

EILEEN T. GALLAGHER, PRESIDING JUDGE

ANITA LASTER MAYS, J., and
FRANK D. CELEBREZZE, JR., J., CONCUR