[Cite as *Maestle v. Best Buy Co.*, 197 Ohio App.3d 248, 2011-Ohio-5833.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 96265

---

# MAESTLE ET AL.,

### APPELLANTS,

v.

# BEST BUY COMPANY ET AL.,

### APPELLEES.

---

## JUDGMENT:
### AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-417593

**BEFORE:** Celebrezze, J., Kilbane, A.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** November 10, 2011

**ATTORNEYS:**

Brian Ruschel; and Dworken & Bernstein Co., L.P.A., and Patrick J. Perotti, for appellants.

Ulmer & Berne, L.L.P., Michael N. Ungar, Isaac J. Eddington, and David D. Yeagley; and Vorys, Sater, Seymour & Pease, L.L.P., and Anthony J. O'Malley, for appellees.

FRANK D. CELEBREZZE JR., Judge.

{¶ 1} Plaintiff-appellant, Shawn W. Maestle, appeals from the judgment of the Cuyahoga County Court of Common Pleas denying his Civ.R. 23 motion for class certification. For the following reasons, we affirm the judgment of the trial court.

{¶ 2} Appellant's suit against defendants-appellees, Bank One, N.A., and Best Buy Company (collectively, "defendants"), related to his purchase of consumer products from Best Buy using a Best Buy "private-label" credit card. Best Buy, a large retail seller of consumer products, has in the past designated certain banks to establish private-label credit cards for its customers' use. One such private-label card program was run by Bank One from 1990 to 1998. On December 24, 1998, Bank One transferred all its private label Best Buy credit-card accounts to a different bank and has not administered any Best Buy private-label accounts since that date.

{¶ 3} Bank One's private-label credit cards were governed by a written account agreement that cardholders received at the Best Buy store when they applied for the card and in the mail when the card was delivered. The credit card allowed Best Buy customers to purchase certain items on credit and avoid paying interest if the purchase was completely paid within a set "promotional period." Customers who made such purchases were informed on their sales receipt which of two promotional plans applied and received a separate "optional financing plans" disclosure that described the benefits and obligations of each plan.

**{¶ 4}** The two general categories of promotional plans offered through the card were "no pay/deferred interest" and "same as cash." With the former, the customer enjoyed a promotional period during which no payment was required. The same-as-cash plan, in contrast, had a year-long promotional period, but the buyer was required to make minimum monthly payments during that time.

**{¶ 5}** On September 13, 2000, appellant filed suit against the defendants on behalf of himself and others similarly situated, alleging breach of contract, fraud, and violations of the Ohio Consumer Sales Practices Act. Specifically, appellant's complaint alleged that defendants improperly:

**{¶ 6}** (1) denied the benefit of "same as cash" promotions by having their credit-card account payments allocated (when they had multiple promotional balances outstanding) to the balance with the latest expiring promotional period;

**{¶ 7}** (2) assessed "a minimum monthly finance charge" on promotional purchases in the amount of 50 cents, or any other amount, when the agreement made no provision for such charges; or

**{¶ 8}** (3) assessed, on a promotional-credit-card balance, interest accruing retroactively from the transaction date rather than from the first day following the expiration of the promotional period.

**{¶ 9}** On June 23, 2006, appellant moved for class certification pursuant to Civ.R. 23, stating that over 10,000 people were subject to Best Buy's alleged improper charges. On February 9, 2007, the trial court scheduled a hearing on class certification for April 11, 2007. On February 26, 2007, defendants moved for summary judgment and

moved to stay the class-certification hearing. On April 2, 2007, the trial court denied defendants' motion to stay class certification. On April 10, 2007, the trial court rescheduled the class-certification hearing to May 2, 2007. By journal entry dated May 7, 2007, the trial court noted that no oral hearing was held on May 2, 2007, and stated that the court would "make its ruling as to class certification within approximately 30 days." On December 7, 2010, over three years later, the trial court denied appellant's motion for class certification, stating that appellant could not establish any of the requirements for class certification except numerosity.

{¶ 10} Appellant appeals from the judgment of the trial court, raising one assignment of error for review.

**Law and Analysis**

{¶ 11} In his sole assignment of error, appellant argues that "the trial court erred in ordering and determining that this action may not be maintained as a class action."

{¶ 12} Civ.R. 23(A) permits courts to group into classes large numbers of persons whose claims for rights or remedies involve common questions of law and fact. Two implicit prerequisites to certification of a class action under Civ.R. 23(A) are (1) that there be an unambiguous, identifiable class and (2) that the class representatives be members of that class. In addition, Civ.R. 23(A) sets forth four explicit requirements that must be met before a class may be certified. The moving party must establish that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative party or parties will fairly and

adequately protect the interest of the class. *Hamilton v. Ohio Sav. Bank* (1998), 82 Ohio St.3d 67, 71, 694 N.E.2d 442.

{¶ 13} Additionally, a party seeking class certification must show that the action conforms to at least one of the three categories of actions, as set forth in Civ.R. 23(B), that qualify for class treatment. *Id.* An action may be brought as a class action if (1) a series of separate actions would create a risk of inconsistent adjudications or incompatible standards of conduct for the party opposing the class action, (2) injunctive relief would be an appropriate remedy for the entire class, or (3) common questions of law or fact predominate over questions involving only individual members of the class and class treatment is the superior method of resolving the controversy. Civ.R. 23(B).

{¶ 14} Class action is a creature of equity, so the plaintiff bears the burden of establishing the right to a class action. *Shaver v. Std. Oil Co.* (1990), 68 Ohio App.3d 783, 589 N.E.2d 1348. The failure to establish any of the seven requirements for class certification will defeat the claim. See *Bardes v. Todd* (2000), 139 Ohio App.3d 938, 943, 746 N.E.2d 229; *Ritt v. Billy Blanks Ents*., 171 Ohio App.3d 204, 2007-Ohio-1695, 870 N.E.2d 212, ¶ 37.

{¶ 15} An appellate court defers to the trial court's decision to certify a class, and any determination as to whether a class action may be maintained can be reversed only for an abuse of discretion. *Marks v. C.P. Chem. Co.* (1987), 31 Ohio St.3d 200, 509 N.E.2d 1249, syllabus. An abuse of discretion implies an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court. *Id.*

{¶ 16} Although defendants raise a number of arguments in support of the trial court's denial of the class certification, we need not discuss each of them in light of our analysis relating to the identifiable class prerequisite.

{¶ 17} As stated above, Civ.R. 23 requires that an identifiable class must exist and that the definition of the class must be unambiguous. This requirement " 'will not be deemed satisfied unless the description of [the class] is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.' 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure (2d Ed.1986), 120-121, Section 1760. Thus, the class definition must be precise enough 'to permit identification within a reasonable effort.' *Warner* [*v. Waste Mgt., Inc.* (1988) 36 Ohio St.3d 91], 96, 521 N.E.2d [1091]." *Hamilton*, 82 Ohio St.3d at 71-72, 694 N.E.2d 442. When possible, a class should be defined by reference to the defendant's conduct. *Id.* at 73.

{¶ 18} Appellant proposed the following definition for the class:

{¶ 19} "All persons who at any time after September 12, 1985 were Best Buy customers, each with a Best Buy credit card, who were: assessed interest or finance charges; a minimum monthly finance charge of 50 cents (or any other amount); finance charges on any promotional purchases earlier than the first day after expiration of the promotional period; or assessed interest or finance charges upon payments demanded prior to the expiration of 90 days."

{¶ 20} The trial court concluded that appellant failed to show an identifiable and unambiguous class because:

{¶ 21} "[Appellant]'s class is overbroad as it includes all account holders who were 'assessed interest or finance charges' from 1985 to present, without regard to whether said account holders were subject to the account related practices alleged in the complaint. Additionally, [appellant]'s proposed class includes account holders of unrelated private label credit cards not administered or issued by defendants."

{¶ 22} Appellant contends that the trial court abused its discretion by concluding that there was not an identifiable class and argues that it would be administratively feasible to determine whether a particular person was a member of the class by looking at the defendants' readily available records.

{¶ 23} However, upon review of the file before us, we agree with the trial court. In this case, the language used in the definition indicates that appellant's purported class would include all account holders who were charged interest or finance charges for any reason, even if the charged interest or finance charges were unrelated to the alleged improper account practices relating to promotional purchases. Therefore, the definition would include Best Buy card holders who were justifiably assessed interest or finance charges and consequently suffered no injury as alleged in the complaint. Such parties would include those who failed to make monthly payments according to the written agreement or those who failed to pay the cost of the purchased consumer goods within the applicable promotional period. To include "all" those who were assessed interest or finance charges is overly broad and ambiguous as a matter of law. See *Miller v. Painters Supply & Equip. Co.*, Cuyahoga App. No. 95614, 2011-Ohio-3976, 2011 WL 3557018, ¶ 24 ("Where a class is overbroad and could include a substantial number of people who

have no claim under the theory advanced by the named plaintiff, the class is not sufficiently definite").

{¶ 24} Had the trial court accepted appellant's class definition as proposed, the persons who were injured by the defendants' allegedly improper account handing would be a subset of the class rather than the class. "If this type of class were permitted, plaintiffs would be able to define a class as broadly as possible in the hope of netting a certain percentage of injured members." *Petty v. Wal-Mart Stores* (2002), 148 Ohio App.3d 348, 354, 773 N.E.2d 576.

{¶ 25} Furthermore, the overly broad and ambiguous nature of appellant's purported class is illustrated by the fact that the definition does not include any reference to co-defendant, Bank One. Because appellant has failed to join other banks in this action, the purported class, in effect, would include all Best Buy account holders since 1985 without consideration of whether Bank One was in fact the entity that issued the private-label card and despite the fact that Bank One operated the Best Buy private-label card only from 1990 to 1998.

{¶ 26} While we acknowledge the availability of defendants' account records, we disagree with appellant's position that each member of the class could be readily identified merely because such records exist. In our view, the overly broad nature of appellant's current class would require the lower court to conduct an individualized inquiry with respect to each individual's account in order to determine whether that individual was in fact injured and, therefore, a proper member of the class. *Barber v. Meister Protection Servs.*, Cuyahoga App. No. 81553, 2003-Ohio-1520, 2003 WL 1564320. This would

obviate the purpose of a class action, because such an individual inquiry would require a case-by-case analysis on the merits of the legal claims of each potential class member. *Id.* See also *Linn v. Roto-Rooter, Inc.*, Cuyahoga App. No. 82657, 2004-Ohio-2559, 2004 WL 1119619; *Hoang v. E\*Trade Group, Inc.*, 151 Ohio App.3d 363, 2003-Ohio-301, 784 N.E.2d 151; *Bungard v. Dept. of Job & Family Servs.*, Franklin App. No. 05AP-43, 2006-Ohio-429, 2006 WL 242550.

{¶ 27} When, as here, individualized fact-finding would be required to determine who was subjected to the alleged improper practices based upon the overly broad nature of the class definition, the class fails the identifiable class prerequisite.

{¶ 28} Therefore, we conclude that the trial court did not abuse its discretion in denying appellant's Civ.R. 23 motion for class certification. On that basis, we overrule appellant's first assignment of error. The remaining arguments raised within appellant's sole assignment of error are moot pursuant to our foregoing analysis.

Judgment affirmed.

BLACKMON, J., concurs.
KILBANE, A.J., dissents.

MARY EILEEN KILBANE, Administrative Judge, dissenting.

{¶ 29} I respectfully dissent. I would find that the appellant has established an identifiable class.

{¶ 30} The majority concludes that appellant's class definition is overly broad because appellant includes "all account holders who were charged interest or finance charges for any reason, even if the charged interest or finance charges were unrelated to the

alleged improper account practices relating to promotional purchases." The majority found that this definition would require the trial court to conduct an individualized inquiry with respect to each account.

{¶ 31} However, "Civ.R. 23 does not require a class certification to identify the specific individuals who are members[,] so long as the certification provides a means to identify such persons." *Planned Parenthood Assn. of Cincinnati, Inc. v. Project Jericho* (1990), 52 Ohio St.3d 56, 63, 556 N.E.2d 157, citing 7A Wright, Miller & Kane, Federal Practice & Procedure (1986), Section 1760 at 115, 118; *Warner v. Waste Mgt., Inc.* (1988), 36 Ohio St.3d 91, 96, 521 N.E.2d 1091. Rather, "[t]he focus at this stage is on how the class is defined. 'The test is whether the means is specified at the time of certification to determine whether a particular individual is a member of the class.' *Planned Parenthood Assn. of Cincinnati, Inc. v. Project Jericho* (1990), 52 Ohio St.3d 56, 63, 556 N.E.2d 157, 165. The question as to whether there are differing factual and legal issues 'do[es] not enter into the analysis until the court begins to consider the Civ.R. 23(B)(3) requirement of predominance and superiority.' [*Marks*, 31 Ohio St.3d at 202, 509 N.E.2d 1249.]" *Hamilton,* 82 Ohio St.3d at 73, 694 N.E.2d 442.

{¶ 32} In *Hamilton*, the plaintiffs sought certification with respect to groups of bank customers who had obtained mortgage loans from the defendant-bank and had been charged interest at rates other than those set forth in the loan agreements. The proposed classes were defined in terms of the charges imposed on customers. The bank argued that the proposed class definition was indefinite because it would be necessary to make individual inquiries about each individual class member's subjective intent and awareness

of his or her loan terms in order to determine whether the individual was part of the class. The Ohio Supreme Court rejected this argument, finding that "[i]t is difficult to accept that individual knowledge inquiries are required to determine class membership in this case, when [the defendant-bank] was able to ascertain, with a reasonable effort, two thousand seven hundred prospective class members without inquiring as to their knowledge or understanding of the terms of their agreements." *Id.* at 74.

{¶ 33} Likewise, in the instant case, the trial court need only look to Best Buy's records of the names, addresses, and transaction details for each class member to determine whether an individual is a member of appellant's proposed class. See also *Washington v. Spitzer Mgt., Inc.*, Cuyahoga App. No. 81612, 2003-Ohio-1735, 2003 WL 1759617. Rose Kirby of Bank One confirmed at her deposition that the class members could be identified by their existing computerized records, which included statement data. A review of appellant's second amended complaint includes only persons who made the promotional purchases and were denied the benefit of the same-as-cash nature of the promised promotion. This is also reiterated in appellant's brief in support of class certification, which demonstrates that the case arises from Best Buy and Bank One improperly charging cardholders interest or finance charges.

{¶ 34} Furthermore, this court in *Maestle v. Best Buy Co.*, Cuyahoga App. No. 79827, 2005-Ohio-4120, 2005 WL 1907282, ¶ 3, previously explained the scope of the class, stating that appellant's class action stems "from a 'no interest' financing allegedly offered by Bank One to qualifying Best Buy customers. The complaint alleges that appellees were improperly assessed finance and interest charges on their Best Buy credit

cards issued by Bank One." Therefore, I would find that it is administratively feasible to determine whether someone is a member of this class. See *Konarzewski v. Ganley, Inc.*, Cuyahoga App. No. 92623, 2009-Ohio-5827, 2009 WL 3649787, ¶ 19.

{¶ 35} Moreover, " '[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.' [*Amchem Prods., Inc. v. Windsor* (1997), 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689], quoting *Mace v. Van Ru Credit Corp.* (C.A.7, 1997), 109 F.3d 338, 344." Here, each cardholder's damages are less than $50. Thus, "[c]lass action treatment would eliminate any potential danger of varying or inconsistent judgments, while providing a forum for the vindication of rights of groups of people who individually would be without effective strength to litigate their claims." *Hamilton*, 82 Ohio St.3d at 80, 694 N.E.2d 442.

{¶ 36} Accordingly, I would reverse the judgment of the trial court.

_____