[Cite as *Cantlin v. Smythe Cramer Co.*, 2018-Ohio-4607.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 106697

**PATRICK W. CANTLIN, ET AL.**

PLAINTIFFS-APPELLEES

vs.

**SMYTHE CRAMER CO.**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-12-790865

**BEFORE:** Blackmon, J., McCormack, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** November 15, 2018

-i-

**ATTORNEYS FOR APPELLANT**

Anthony J. Coyne
Jeffrey M. Embleton
Tracey S. McGurk
Mansour Gavin L.P.A.
55 Public Square, Suite 2150
Cleveland, Ohio 44113

Jennifer M. Keas
Jay N. Varon
Foley & Lardner, L.L.P.
3000 K Street, N.W., Suite 600
Washington, D.C. 20007


**ATTORNEYS FOR APPELLEES**

Patrick J. Perotti
Nicole T. Fiorelli
James S. Timmerberg
Dworken & Bernstein Co., L.P.A.
60 South Park Place
Painesville, Ohio 44077

James A. Deroche
Garson Johnson, L.L.C.
1600 Midland Building
101 West Prospect Avenue
Cleveland, Ohio 44115

Glenn D. Feagan
Law Offices of Glenn D. Feagan
101 W. Prospect Avenue, Suite 1600
Cleveland, Ohio 44115

PATRICIA ANN BLACKMON, J.:

{¶1} Smythe Cramer Co., d.b.a. Howard Hanna Smythe Cramer ("HHSC"), appeals from

the trial court's granting plaintiffs Rita Noall, Cindy Miller, Patrick Cantlin, and Elizabeth

Hong's ("Plaintiffs") motion for class certification in this fraud and unjust enrichment case and assigns the following error for our review:

I.     The trial court abused its discretion by certifying two new proposed classes in a December 18, 2017 order, because a rigorous analysis of the record, which was supplemented following this Court's May 26, 2016 reversal of a previously-proposed class, shows serious obstacles to predominance, identifiability, and typicality.

**{¶2}** Having reviewed the record and pertinent law, we affirm the trial court's judgment. The apposite facts follow.

**{¶3}** This lawsuit is a proposed class action, the heart of which concerns a $225 fee ("the Fee"), which HHSC charged putative class members allegedly as compensation for services performed in real estate transactions. The gist of Plaintiffs' argument is that the Fee is essentially unearned,[1] because HHSC offered no services in exchange for the Fee, other than the services already offered to its customers prior to charging the Fee. As the trial court aptly stated, "[t]he plaintiffs claim to have evidence demonstrating that [HHSC] devised a scheme to assess the fee as a disguised raise in its sales commission to avoid the customer backlash that might have come with an overt increase in the percentage commission." The three real estate transactions involving the named Plaintiffs in this case are as follows.

**{¶4}** On May 21, 2009, Noall entered into an agreement with HHSC to buy real estate. Noall signed an HHSC form entitled "Offer to Purchase Real Estate and Acceptance." In

---

[1] In *Freeman v. Quicken Loans, Inc.,* 566 U.S. 624, 631, 132 S.Ct. 2034, 182 L.Ed.2d 955 (2012), the United States Supreme Court addressed "unearned fees" under 12 U.S.C.S. 2607(B), which governs real estate settlement procedures, and states that "No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." The *Freeman* court stated that the statute "unambiguously covers only a [real estate] provider's splitting of a fee with one or more persons; it cannot be understood to reach a single provider's retention of an unearned fee." Although the Supreme Court found that the statute did not prohibit unearned fees as long as they were undivided, the issue in the case at hand concerns liability under common law fraud and unjust enrichment theories, rather than liability under 12 U.S.C.S. 2607(B).

section K of this form, Noall agreed to pay "an administrative fee of $225 to [HHSC] * * *." This section of Noall's document also states that if the seller is represented by HHSC, the seller agrees to pay "an administrative fee of $225" to HHSC. Furthermore, Noall's HUD settlement statement lists on line item 705 that she paid an "Admin Fee" of $225 to HHSC.

{¶5} On June 23, 2009, Cantlin and Hong entered into an agreement with HHSC to buy real estate. Cantlin and Hong signed an HHSC form entitled "Purchase Agreement Offer, Receipt and Acceptance," line item 106 of which obligates them to pay "a fee of $225.00 to Howard Hanna for brokerage services rendered to the BUYER." Line 301 of this same document states that the sellers agree to pay HHSC "a brokerage commission of seven percent (7%) of the sales price and $225."[2] Cantlin and Hong's HUD settlement statement indicates on line item 704 that they paid an "Administrative Fee" of $225 to HHSC.

{¶6} On July 27, 2009, Miller entered into an agreement with HHSC to sell real estate. Miller signed an HHSC form entitled "Exclusive Right to Sell Agreement," section D of which states that "Seller also agrees to pay an Administrative Fee of $225 to Howard Hanna * * *." Miller also signed a Purchase Agreement Offer, Receipt and Acceptance which states on line item 97 that, if the seller is represented by HHSC, the seller shall pay "an Administrative Fee of $225" to HHSC. This document further states that the buyer shall also pay "an Administrative Fee of $225" to HHSC. Miller's HUD settlement statement lists on line item 105 that she paid HHSC a $225 "Broker Service Fee."

{¶7} On September 6, 2012, Plaintiffs filed this action alleging fraud, unjust enrichment, and fraudulent inducement and moved for class certification using the following definition:

---

[2] In *Cantlin v. Smythe Cramer Co.*, 8th Dist. Cuyahoga No. 103339, 2016-Ohio-3174, ¶ 33, this court referred to the language "a brokerage commission of seven percent (7%) of the sales price and $225" as a "hybrid commission fee" and found that this type of fee is "inconsistent" with claims for fraud.

All individuals: (1) in the state of Ohio; (2) from September 18, 2005 to the present; (3) who paid to Defendant a fee entitled "administrative fee," "broker service fee," "brokerage fee," or other similar title, which fee is usually listed on line 704 or 705 of the HUD-1.

**{¶8}** The trial court granted class certification on July 10, 2015. HHSC appealed, and this court reversed the trial court's decision, finding that "*as the class is currently defined*, this action does not satisfy the predominance requirement of Civ.R. 23(B)(3)" to certify a class action. (Emphasis sic.) *Cantlin v. Smythe Cramer Co.*, 8th Dist. Cuyahoga No. 103339, 2016-Ohio-3174, ¶ 37 ("*Cantlin I*"). In finding that this class definition did not pass muster under Civ.R. 23(B)(3), this court held as follows:

In this case, there is no dispute that the HUD-1 is a standardized form. In addition, the HUD-1 clearly indicates whether a prospective class member has or has not paid the challenged "administrative fee." However, we find the HUD-1, standing alone, does not constitute generalized evidence that proves or disproves the elements of fraud, fraud in the inducement, and unjust enrichment on a "simultaneous, class-wide basis." In other words, the fact that an individual's HUD-1 shows that he or she paid an "administrative fee" is not evidence that will determine whether the class members' fraud claims "will prevail or fail in unison." In our view, the circumstances presented in this case require us to consider the HUD-1 in conjunction with the HHSC purchase agreements signed by each prospective class member.

**{¶9}** Upon remand, Plaintiffs filed a new motion for class certification and redefined the class into two groups:

**Administrative Fee Class:**

All individuals in the state of Ohio, both buyers and sellers, who, on or after September 18, 2005, paid Defendant an "administrative fee" or "administrative services fee" pursuant to the Exclusive Right to Sell Agreement; Exclusive Buyer Representation Agreement; Offer to Purchase Agreement; or Purchase Agreement.

**Brokerage Services Fee Class:**

All buyers of real estate in Ohio who, during or after March 2009, paid the

Defendant a "brokerage services" fee pursuant to the Purchase Agreement; or

Offer to Purchase Agreement.

**{¶10}** The trial court granted class certification on December 19, 2017, finding that the redefined class met the Civ.R. 23 threshold, including subsection (B)(3)'s predominance requirement, "[b]ecause all the elements of fraud and unjust enrichment can be proved or disproved by common proof [and] the questions of law and fact on both causes of action which are common to the class members predominate over questions which might affect only individual members." It is from this order that HHSC appeals, arguing that Plaintiffs fail to meet the Civ.R. 23(B) requirements of identifiability, typicality, and predominance in the redefined subclasses.

## Class Certification Requirements

**{¶11}** Civ.R. 23 provides seven requirements for maintaining a class action:

(1) an identifiable class must exist and the definition of the class must be unambiguous; (2) the named representatives must be members of the class; (3) the class must be so numerous that joinder of all members is impracticable; (4) there must be questions of law or fact common to the class; (5) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; (6) the representative parties must fairly and accurately protect the interests of the class; and (7) one of the three Civ.R. 23(B) requirements must be met.

(Citations omitted.) *Cullen v. State Farm Mut. Auto. Ins. Co.*, 137 Ohio St.3d 373, 2013-Ohio-4733, 999 N.E.2d 614, ¶ 12.

**{¶12}** Of the three Civ.R. 23(B) requirements, subsection (3) is applicable to the case at hand, and it states that a class action may be maintained if:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> > (a) the class members' interests in individually controlling the prosecution or defense of separate actions;
> >
> > (b) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> >
> > (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> >
> > (d) the likely difficulties in managing a class action.

**{¶13}** Plaintiffs seeking class certification must prove all seven requirements by a preponderance of the evidence. *Warner v. Waste Mgmt.*, 36 Ohio St.3d 91, 94, 521 N.E.2d 1091 (1988). However, as noted, HHSC is challenging only three of the requirements: identifiability, typicality, and predominance.

## Standard of Review

**{¶14}** When ruling on a motion to certify a class, the trial court must conduct a "rigorous analysis" of the evidence before it. As this court has held,

> In *Cullen*, the Ohio Supreme Court indicated that the rigorous analysis "requires the court to resolve factual disputes relative to each requirement and to find, based upon those determinations, other relevant facts, and the applicable legal standard, that the requirement is met." A trial court may examine the underlying merits of the claim as part of its rigorous analysis, but only to the extent necessary to determine whether the Civ.R. 23 requirements are satisfied. Further, "deciding whether a claimant meets the burden for class certification pursuant to Civ.R. 23 requires the court to consider what will have to be proved at trial and whether those matters can be presented by common proof."

(Citations omitted.)  *Konarzewski v. Ganley*, 8th Dist. Cuyahoga No. 104681, 2017-Ohio-4297, ¶ 12.

{¶15}  Appellate courts apply an abuse of discretion standard in reviewing class action determinations.  This "is grounded not in credibility assessment, but in the trial court's special expertise and familiarity with case-management problems and its inherent power to manage its own docket."  *Gattozzi v. Sheehan*, 8th Dist. Cuyahoga No. 103426, 2016-Ohio-5230, ¶ 16.

### Identifiability

{¶16}  Civ.R. 23(A) requires that the class definition be unambiguous and the class identifiable.  "'The requirement that there be a class will not be deemed satisfied unless the description of it is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'"  *Hamilton v. Ohio Sav. Bank*, 82 Ohio St.3d 67, 71-72, 694 N.E.2d 442 (1998), quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure*, Section 1760, at 120-121 (2d Ed.1986). "The test is whether the means is specified at the time of certification to determine whether a particular individual is a member of the class."  *Planned Parenthood Assn. of Cincinnati v. Project Jericho*, 52 Ohio St.3d 56, 63, 556 N.E.2d 157 (1990).

{¶17}  On appeal, HHSC argues that the trial court failed to consider the evidence it submitted regarding whether class members could be "identified with reasonable effort." According to HHSC, "there would be no way to determine class membership without a file-by-file review and individual analysis of each transaction."  HHSC offers three reasons to support its argument.

{¶18} First, its agents used "[d]ifferent versions of the HHSC forms," some of which may have referenced the $225 fee and some of which may have described the "hybrid commission,"

which this court in *Cantlin I* determined was "inconsistent with the claims alleged in plaintiffs' complaint * * *." Second, "there are major defects in terms of identifying allegedly injured buyers * * *." Third, whether a putative class member "actually *paid* the Fee * * * could not be ascertained without individualized inquiry." (Emphasis sic.)

{¶19} A careful reading of HHSC's argument that the class is allegedly not identifiable reveals that all three reasons HHSC set forth are essentially the same — that individualized fact-finding would be required to determine membership in the class. While individualized fact-finding may defeat class certification, this is true only when the cause of the problem is plaintiff's overly broad class definition. *See Maestle v. Best Buy Co.*, 197 Ohio App.3d 248, 2011-Ohio-5833, 967 N.E.2d 227, ¶ 26, (8th Dist.). ("In our view, the overly broad nature of appellant's current class would require the lower court to conduct an individualized inquiry with respect to each individual's account in order to determine whether that individual was in fact injured and, therefore, a proper member of the class").

{¶20} HHSC's arguments under this factor of the class certification analysis are not well taken. In finding that the class members in the instant case are identifiable, the trial court stated that HHSC can reasonable identify its transactions for buyers and sellers using the noted form documents containing the Fee. Specifically, the court concluded that "it is essentially a clerical task to weed out those who did not actually pay the fee or paid a negotiated amount." The court also stated that class members "should be able to identify themselves by looking at lines 704 and 705 of their HUD-1 settlement statements to see if a fee was paid to [HHSC]." The court further found that the new class definitions excluded sellers who paid the "hybrid fee" mentioned in *Cantlin I*. Upon review, we find that the class definitions are narrowly tailored to include those people who paid an "administrative fee" or "brokerage services fee" as specified in HHSC's

forms. HHSC's argument that its own forms are so convoluted and varied that it is an unreasonable task to identify who paid what is without merit.

{¶21} Ohio courts have favored class certification when fraud is alleged concerning a defendant's form contracts. "[C]laims involving interpretations of form contracts present the classic case for treatment as a class action * * *." *Carder Buick-Olds Co. v. Reynolds & Reynolds*, 148 Ohio App.3d 635, 2002-Ohio-2912, 775 N.E.2d 531, ¶ 45.

> Generally, courts have found that when a common fraud is perpetrated on a group of plaintiffs, those plaintiffs should be able to pursue the claim without focusing on questions affecting individual members. In this regard, fraud cases that involve a single underlying scheme and common misrepresentations or omissions across the class are particularly subject to common proof. Once the plaintiff establishes that there are common misrepresentations or omissions affecting all class members, a class action can be certified notwithstanding the need to prove reliance.
> Furthermore, direct evidence is not necessary to establish inducement and reliance. Instead, these elements of fraud can be established by inference or presumption. Courts have generally found that because inducement and reliance can be inferred from common proof of misrepresentations or omissions, the need for individualized proof is obviated. Even if specialized inquiries into reliance were necessary, this should not defeat class certification.

(Citations omitted.) *Id.* at ¶ 47-48. *See also Baughman v. State Farm Mut. Auto. Ins. Co.*, 88 Ohio St.3d 480, 727 N.E.2d 1265 (2000); *Hamilton,* 82 Ohio St.3d 67, 694 N.E.2d 442; *Cope v. Metro. Life Ins. Co.,* 82 Ohio St.3d 426, 430, 696 N.E.2d 1001 (1998) ("a wide variety of claims may be established by common proof in cases involving similar form documents or the use of standardized procedures and practices").

{¶22} Additionally,

> [w]hile potential dissimilarity in remedies is a factor to be considered in determining whether individual questions predominate over common questions, that alone does not prevent a trial court from certifying a cause as a class action. * * * It is fundamental here that each member of the class * * * may not be awarded the same amount of damages in the event appellants are found liable. Nevertheless, the key fact is that the injuries sustained by the class flow from identical operative facts * * *.

*Vinci v. American Can Co.*, 9 Ohio St.3d 98, 101-102, 459 N.E.2d 507 (1984).

{¶23} Upon review, we find that the trial court conducted a rigorous analysis of the class members' identifiability and acted within its discretion when determining that this requirement was met.

## Typicality

{¶24} HHSC's arguments on appeal concerning typicality are focused on the named-plaintiff Noall.[3] On August 14, 2009, Noall signed a General Release of All Claims against HHSC in exchange for her real estate agent paying $200 to the sellers of the property at issue to cover late fees from the lender. This release states, in pertinent part, as follows:

> Noall * * * do [sic] hereby forever release, acquit, and discharge [HHSC] from any and all claims and demands, obligations, judgments, actions, causes of action, liabilities for injuries, death, losses and damages, whether personal, property, or economic, whether now known or unknown, that were or could have been raised in relation to the Property.

{¶25} HHSC argues that this "release shows that Ms. Noall cannot receive redress from this case and, thus, lacks standing. Without standing, Ms. Noall is not a typical representative." Plaintiffs, on the other hand, argue that Noall meets the typicality requirement because she "was charged the same sham administrative fee as the rest of the members of the Administrative Fee Class * * *." Plaintiffs further argue that "Noall has not asserted any claims with respect to the property"; therefore, the release does not apply to this case.

{¶26} We first address the issue of standing. The Ohio Supreme Court has held a plaintiff must have standing to pursue a class action. *Hamilton* 82 Ohio St.3d at 70, 694 N.E.2d

---

[3] HHSC briefly argues that named-plaintiffs Cantlin and Hong are also atypical because of the placement and categorization of the Fee on their HUD-1. However, this court made it clear that "the HUD-1, standing alone, does not constitute generalized evidence that proves or disproves the elements of fraud * * *." *Cantlin I* at ¶ 28.

442; *Lycan v. Cleveland*, 146 Ohio St.3d 29, 2016-Ohio-422, 51 N.E.3d 593, ¶ 30. However, Civ.R. 8(C) lists a release of claims as an affirmative defense. Upon review, we find that Noall's standing is not at issue as far as the release is concerned. Rather, the release is properly regarded as an affirmative defense.

{¶27} "The requirement for typicality is met where there is no express conflict between the class representatives and the class. Similarly, a representative is deemed adequate so long as his or her interest is not antagonistic to that of other class members." *Hamilton* at 77-78. Furthermore, "a unique defense will not destroy typicality or adequacy of representation unless it is 'so central to the litigation that it threatens to preoccupy the class representative to the detriment of the other class members.'" *Id.* at 78, quoting 5 Moore, *Federal Practice,* 23-126, Section 23.25(4)(b)(iv) and 23-98, Section 23.24(6) (3d Ed.1997).

{¶28} The Ohio Supreme Court has clarified that "the focus at [the class certification] stage of the proceedings should properly remain on the essential conforming characteristics of the defendant's conduct and the claims arising therefrom." *Baughman,* 88 Ohio St.3d at 487, 727 N.E.2d 1265. The *Baugham* court also noted that "any doubts about adequate representation, potential conflicts, or class affiliation should be resolved in favor of upholding the class, subject to the trial court's authority to amend or adjust its certification order as developing circumstances demand, including the augmentation or substitution of representative parties." *Id.*

{¶29} In *Baughman*, the Ohio Supreme Court held that "'defenses asserted against a class representative should not make his or her claims atypical. Defenses may affect the individual's ultimate right to recover, but they do not affect the presentation of the case on the liability issues for the plaintiff class.'" (Citation omitted.) *Baughman,* at 486. *Compare Eighmey v. Cleveland*, 8th Dist. Cuyahoga No. 104779, 2017-Ohio-7092, ¶ 18 (although "defenses may or

may not destroy the typicality of [a plaintiff's] class representation depending on how central they are to the litigation * * *[,] standing is an entirely different matter because rather than raising questions about the merits of the plaintiff's claims, it addresses justiciability").

{¶30} Upon review, we find that Noall's claim meets the typicality requirement of class certification, because there is no express conflict between her claim and the class-wide claim. HHSC's affirmative defense of release of claims goes to the merits of Noall's allegations of fraud and unjust enrichment, and should not defeat class certification. *See Haller v. Borror Corp.*, 50 Ohio St.3d 10, 13, 552 N.E.2d 207 (1990) ("A release of a cause of action for damages is ordinarily an absolute bar to a later action on any claim encompassed within the release").

## Predominance

{¶31} Civ.R. 23(B)(3) states that a

class action may be maintained * * * if * * * the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

{¶32} The statute lists four matters that are pertinent to these findings:

(a) the class members' interests in individually controlling the prosecution or defense of separate actions;

(b) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(d) the likely difficulties in managing a class action.

{¶33} The Ohio Supreme Court has held that "[f]or common questions of law and fact to predominate, it is not sufficient that such questions merely exist; rather, they must represent a significant aspect of the case. Furthermore, they must be capable of resolution for all members

in a single adjudication." *Marks v. C.P. Chem. Co.*, 31 Ohio St.3d 200, 204, 509 N.E.2d 1249 (1987). As this court held in *Cantlin I*, "[w]here common issues predominate, the class members 'will prevail or fail in unison.'" *Cantlin I,* 8th Dist. Cuyahoga No. 103339, 2016-Ohio-3174, at ¶ 22, quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 460, 133 S.Ct. 1184, 185 L.Ed.2d 308 (2013). Although class action certification does not reach the merits of the case,

> deciding whether a claimant meets the burden for class certification pursuant to Civ.R. 23 requires the court to consider what will have to be proved at trial and whether those matters can be presented by common proof. * * * Thus, * * * in resolving a factual dispute when a requirement of Civ.R. 23 for class certification and a merit issue overlap, a trial court is permitted to examine the underlying merits of the claim as part of its rigorous analysis, but only to the extent necessary to determine whether the requirement of the rule is satisfied.

*Cullen v. State Farm Mut. Auto. Ins. Co.,* 137 Ohio St.3d 373, 2013-Ohio-4733, 999 N.E. 2d 614, ¶ 17.

{¶34} This court held in *Cantlin I* that, in considering only each putative member's HUD-1 document, "the alleged fraudulent conduct was not standardized. * * * There is no common misrepresentation or omission across the *entire* class." (Emphasis sic.) *Cantlin I,* at ¶ 37. This court suggested that redefining the class may overcome the Civ.R. 23(B)(3) predominance hurdle. On remand, the trial court certified two sub-classes now defined by four HHSC forms: Exclusive Right to Sell Agreement; Exclusive Buyer Representation Agreement; Offer to Purchase Agreement; and Purchase Agreement. To be part of the class at issue, one has to meet the following criteria: a real property buyer or seller in Ohio; represented by HHSC on or after specified dates; paid the Fee to HHSC; pursuant to any of the four form documents.

{¶35} The trial court found that the central issue in this case is

> whether the fee charged by [HHSC] is redundant of a commission already earned and paid and thus a 'sham fee' that must be disgorged and returned to those who

paid it. Since the misrepresentations are alleged to be in the contract and settlement statements, and those documents are the same for each of the two classes, answering this question once will answer the question for the whole class.

**{¶36}** The court further found that "inferences or presumptions of inducement and reliance" are permitted to establish the elements of fraud in class actions. To properly analyze whether questions of fact or law common to class members predominate over individual questions, we must consider what Plaintiffs will have to prove at trial to succeed on their fraud and unjust enrichment claims.

**{¶37}** This court has held that the "elements of fraudulent inducement are essentially the same as those for fraudulent misrepresentation, fraudulent concealment, and fraudulent nondisclosure." *Pedone v. Demarchi*, 8th Dist. Cuyahoga No. 88667, 2007-Ohio-6809, ¶ 29. Therefore, we treat Plaintiffs' fraud and fraudulent inducement claims as one. The elements of fraud are: (a) a misrepresentation or concealment of fact; (b) that is material to the transaction at hand; (c) made falsely, with knowledge of its falsity or with utter disregard and recklessness as to whether it is false; (d) with the intent of misleading another into relying upon it; (e) justifiable reliance upon the misrepresentation or concealment; and (f) resulting injury proximately caused by the reliance. *Cohen v. Lamko, Inc.,* 10 Ohio St.3d 167, 169, 462 N.E.2d 407 (1984).

**{¶38}** Plaintiffs in the case at hand would have to prove that: (a) HHSC misrepresented or concealed the nature of the Fee; (b) the $225 Fee is material to the transaction; (c) HHSC knew of or disregarded the falsity; (d) HHSC intended to mislead the class members; (e) the class members justifiably relied on HHSC's misrepresentation or concealment; and (f) the class members were injured.

**{¶39}** Upon review, we find that Plaintiffs may present common evidence to show (a) - (c) and (f), i.e., HHSC's four form documents contained in the class definitions, Plaintiffs' HUD

statements, and other standardized evidence. We are not commenting on the merits of Plaintiffs' case; rather, we are determining that Plaintiff's case may be won — or lost — with common proof.

**{¶40}** In *Amato v. Gen. Motors Corp.*, 11 Ohio App.3d 124, 128, 463 N.E.2d 625 (8th Dist.1982), this court "held here and now that proof of reliance may be sufficiently established by inference or presumption from circumstantial evidence to warrant submission to a jury without direct testimony from each member of the class." *See also Cope v. Metro. Life Ins. Co.,* 82 Ohio St.3d 426, 436, 696 N.E.2d 1001 (1998) ("It is not necessary to establish inducement and reliance upon material omissions by direct evidence. When there is nondisclosure of a material fact, courts permit inferences or presumptions of inducement and reliance. Thus, cases involving common omissions across the entire class are generally certified as class actions, notwithstanding the need for each class member to prove these elements"). Thus, the need for individualized proof of the (d) and (e) fraud elements is obviated.

**{¶41}** The elements of unjust enrichment are: (a) plaintiff confers a benefit on defendant; (b) defendant knows about the benefit; and (c) defendant unjustly retains the benefit. *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984). Unjust enrichment is an alternative theory of recovery, which "operates in the absence of an express contract or a contract implied in fact to prevent a party from retaining money or benefits that in justice and equity belong to another." *Gallo v. Westfield Natl. Ins. Co.,* 8th Dist. Cuyahoga No. 91893, 2009-Ohio-1094, ¶ 19.

**{¶42}** Similar to our analysis of the fraud claim, Plaintiffs in the case at hand would be able to show unjust enrichment by common proof. We note that, with unjust enrichment, recovery is not available when the parties signed an express contract. Both subclasses in this

case center around HHSC's form documents. In fact, one cannot be a class member without a signed contract. We are mindful that there is no summary judgment motion before us, and we are not passing upon the merits of this case. Thus, for the purpose of class certification, Plaintiffs can set forth an unjust enrichment claim with common proof that HHSC unjustly retained the class members' $225.

**{¶43}** HHSC argues that even under the redefined subclasses, "not all class members necessarily understood the Fee in the same way." For example, HHSC argues that "evidence in the record showed that many consumers received written and oral information that the Fee * * * was *part of* the overall brokerage commission * * *." (Emphasis sic.) HHSC's argument fails to recognize the holdings in *Amato* and *Cope*. The redefined subclasses do not include HHSC customers who were charged a "hybrid commission," as evidenced by HHSC documents. Rather, the subclasses include HHSC customers who were charged a separate fee, and reliance that the fee was "earned" may be presumed for the sake of class certification.

**{¶44}** It is important to note that this presumption does not shift the burden of proof. Rather, the presumption of reliance shifts "the burden of going forward." *Amato,* 11 Ohio App.3d at 128, 463 N.E.2d 625. Defendants may introduce evidence in rebuttal. *Id.*

> Proofs on the merits of this case have not yet been introduced and it is not the office of a reviewing court to suggest avenues to proof to the parties. Suffice it to say that imagination calls up various proof and rebuttal possibilities that may be available to the parties. Until the opportunities are exhausted at trial, one can only speculate whether a case can be made in all the necessary elements. On this score it is noted that the rule permits a trial court considerable flexibility in deciding classes and in determining which issues may be brought or maintained in a class action.

*Id.,* at 129.

**{¶45}** HHSC additionally argues that the trial court failed to consider "varying oral explanations by real estate sales agents" and "independent non-parties," various versions of the

HUD-1, and other HHSC documents such as a buyer's guide regarding the Fee. This is not an accurate depiction of the trial court's analysis. Just because the trial court did not rule in HHSC's favor does not mean the trial court failed to consider HHSC's evidence and contentions. The trial court wrote a detailed decision analyzing both sides' arguments. In fact, the trial court stated in its decision that the alleged misrepresentation is evidenced in the HHSC forms, notwithstanding other explanations:

> That is true even for plaintiffs who discussed the fee with a representative of Howard Hanna and still paid it. If one plaintiff can prove that Howard Hanna charged $225 for doing nothing that it hadn't otherwise charged and been compensated for, then even plaintiffs who were given oral assurances that the fee was in exchange for valuable services and then paid the fee should still recover since even though they may not have relied on the misrepresentation in the documents, they relied on the defendant's spoken lies.

{¶46} In other words, if the trier of fact concludes that the Fee was fraudulent, all class members may recover. If, on the other hand, the trier of fact concludes that no fraud occurred, the class action fails. As the trial court noted, "[p]ermitting a fraud because it was so successful that people didn't know they were being cheated only rewards the cheater's ingenuity and is hardly consistent with justice." We are mindful that the ultimate question of whether the Fee was fraudulent goes to the merits of the case.

{¶47} HHSC further argues that individual issues predominate over class-wide issues because of the multitude of forms that HHSC uses. "The record demonstrates that older HHSC forms are sometimes used by agents even after new versions of those forms — with different language — are rolled out." However, HHSC cannot avoid being sued in a class action in the instant case because they use too many different forms. The subclass definitions that the court certified include four forms with specific language. If a Plaintiff can show that he or she signed

one of these forms and paid the Fee, they can participate in the class action. This is the predominant issue of the case.

{¶48} HHSC also argues that the case at hand is "directly in line with cases rejecting class treatment for lack of predominance." To support this argument, HHSC cites *Young v. FirstMerit Bank, N.A.*, 8th Dist. Cuyahoga No. 94913, 2011-Ohio-614.

{¶49} *Young* involved a proposed class of over 700 investors who purchased promissory notes from Joanne Schneider, who was later convicted of running a $60.5 million Ponzi scheme. *Id.* at ¶ 6-7. The trial court certified the class, and this court reversed, finding that the Plaintiffs failed to meet the predominance requirement of Civ.R. 23(B)(3). In *Young*, unlike in the case at hand, the fraud alleged was not contained in the standard promissory notes that the defendant used. Rather, the *Young* plaintiffs alleged that the fraud occurred in how Schneider sold these notes. "These elements are specific to each individual investor, i.e., amount invested, number of investments, return on the investment, external inducements, and representations made by Schneider." *Id.* at ¶ 25. The *Young* court further found that "[e]ach plaintiff stated different reasons for investing their funds with Schneider." *Id.* at ¶ 26. The court concluded that "reliance cannot be presumed when the alleged misrepresentations are so varied. * * * Each fraud perpetrated by Schneider varied in its misrepresentations, reliance, inducement, and injury." *Id.* at ¶ 28-29.

{¶50} The instant case is distinguishable from *Young* in that the alleged fraud can be found in four HHSC standard forms. Plaintiffs allege that the misrepresentation or concealment regarding the Fee is specific, in writing, and the same for all class members. In *Young*, the entire investment scheme was alleged to be fraudulent, and the material misrepresentations were different for each plaintiff. For example, "some of the initial investors did in fact see high

returns on their investments * * * ." *Id.* at ¶ 28. In the case at hand, every putative class member was charged the Fee as part of a real estate transaction, and the Fee is alleged to be fraudulent for all who paid it.

**{¶51}** Upon review, we find that common issues predominate over questions affecting individual plaintiffs. Under Civ.R. 23(B)(3)(a), "the class members' interests in individually controlling the prosecution or defense of separate actions" do not outweigh the class members' common issues. Under Civ.R. 23(B)(3)(b), evidence in the record shows that Plaintiffs previously filed a similar suit in federal court, but that case was dismissed. The Ohio Supreme Court has held that "the *lack* of parallel lawsuits tends to weigh in *favor* of certification." *Hamilton v. Ohio Sav. Bank*, 82 Ohio St.3d 67, 81, 694 N.E.2d 442 (1998) (Emphasis sic). Under Civ.R. 23(B)(3)(c), concentrating this litigation as a single case in state court appears to be efficient, because common issues predominate, the real estate transactions at issue took place in Ohio, and violations of Ohio law are alleged. Finally, under Civ.R. 23(B)(3)(d), the trial court found that "managing these claims as a class action — especially where the hypothetical alternative is thousands of individual lawsuits — does not present any special difficulties which make individual cases a superior means of accomplishing a just result."

**{¶52}** Accordingly, we find that the trial court acted within its discretion by certifying this redefined class action, and HHSC's sole assigned error is overruled.

**{¶53}** Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the

Rules of Appellate Procedure.


_____
PATRICIA ANN BLACKMON, JUDGE

TIM McCORMACK, P.J., and
SEAN C. GALLAGHER, J., CONCUR