[Cite as *Goree v. Northland Auto Ents. Inc.*, 2020-Ohio-3457.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

SHANELL GOREE,                          :

    Plaintiff-Appellee,          :

                                  No. 108881

    v.                          :

NORTHLAND AUTO ENTERPRISES            :
INC., ET AL.,

                                  :

    Defendants-Appellants.

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 25, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-11-758061

---

### *Appearances:*

Frederick & Berler, L.L.C., Ronald I. Frederick, Michael L. Berler, and Michael L. Fine, *for appellee.*

Gallagher Sharp L.L.P., Clark D. Rice, Richard C.O. Rezie, and Thomas G. Lobe, *for appellants.*

MARY EILEEN KILBANE, J.:

{¶ 1} Defendants-appellants, Northland Auto Enterprises, Inc. ("Northland"), North Coast Auto Sales, Inc. ("North Coast"), Al Lentsch ("Lentsch"), Joe Zawatski ("Zawatski"), and LTO Financial, L.L.C. ("LTO") (collectively,

"Appellants") appeal from the order of the trial court granting plaintiff-appellee Shanell Goree's ("Goree"), motion for class certification. For the reasons that follow, we affirm.

## I. FACTUAL BACKGROUND

### A. The Parties

{¶ 2} Northland is a Minnesota corporation and Lentsch is its CEO. Northland created the "Ren'T'Own®" and "Lease'T'Own™" programs and provides services to help auto dealers implement those programs. Cleveland-based North Coast is one such auto dealer that implemented Northland's Ren'T'Own program. Zawatski owns North Coast. LTO is a Minnesota corporation, owned and operated by Lentsch. It provided financing to North Coast related to the Ren'T'Own program and sometimes would take title of vehicles under the Ren'T'Own program.

{¶ 3} Goree was a North Coast customer who entered into an agreement to lease a 1999 Dodge Intrepid through Northland's Ren'T'Own program.

### B. The Ren'T'Own Program

{¶ 4} Northland founded the Ren'T'Own program in 1990. It describes the program in a promotional brochure as an "in-house option for customers with bruised credit or customers who are unable to obtain financing."

{¶ 5} Under the Ren'T'Own program, the dealer retains title to the vehicle, but customers' payments go toward their purchase of the vehicle. When customers return their vehicle and obtain a new one under the Ren'T'Own program, they will likely incur new "origination fees," which the lease documents attribute to

processing the lease transaction. Northland instructs participating dealers to set the selling price of the vehicle by marking up the wholesale price between 2-2.4%; establish a weekly, biweekly, or monthly periodic payment on each vehicle to last at least 12 months; and establish a nonrefundable origination fee, recommended at 8-10% of the customer's total payments.

{¶ 6} To incentivize dealer participation in the program, Northland provides participating auto dealers with contingent liability insurance per vehicle plus physical damage insurance. Northland also claims the program benefits dealers because it sets up a system that allows dealers to avoid repossession costs and increase customer loyalty. It claims to accomplish this by instructing customers to return the vehicle if they cannot pay when payment is due. In reality, because customers do not gain title to their car while renting under the Rent'T'Own program, they can only trade in their vehicles from the dealer who rented it to them.

{¶ 7} Northland also offers certain options to dealers under the program that it claims can increase dealers' profits. These options include purchasing digital GPS tracking devices and an engine-transmission warranty for vehicles sold through the Ren'T'Own program. The GPS tracking system allows dealers to remotely interrupt the starter of a vehicle if the customer fails to remit a timely payment. Goree alleges that this practice amounts to a repossession, while avoiding any of the formalities or expenses of repossession, because it effectively deprives the customer of the use of the vehicle.

**{¶ 8}** The parties agree that Northland's Ren'T'Own program was eventually discontinued in Ohio because Ohio's Lease-Purchase Statute — R.C. 1351.01 — excludes automobiles. However, Goree alleges that Appellants nevertheless implemented the Ren'T'Own program in Ohio during the time relevant to the complaint.

### C.   Goree's Agreement

**{¶ 9}** Goree executed several documents around July 30, 2009. The documents appear to be on forms created by Northland for its Ren'T'Own program. These documents include the following: (1) Consumer Lease Agreement (the "Agreement"); (2) a promissory note; (3) a payment book, detailing the amount due on each payment date; (4) an addendum authorizing North Coast to track the vehicle with a GPS device and disable the vehicle if Goree defaulted on her payments; and (5) an extended product warranty registration agreement.

**{¶ 10}** Goree entered into the Agreement with North Coast on July 30, 2009, for a 1999 Dodge Intrepid with 77,213 miles. The cash price of the vehicle is listed at $12,790.36 on the Agreement. Attached as exhibits to the complaint are Kelley Blue Book estimates that list the suggested retail value of $5,275 for a 2001 Dodge Intrepid in excellent condition with the 77,213 miles. The difference between the Kelley Blue Book estimate and the cash price listed on the Agreement indicates that North Coast increased the retail value by about 2-2.4% to determine the selling price of Goree's vehicle, which the Ren'T'Own program suggests dealers do.

{¶ 11} The Agreement states, "You will make 82 bi-weekly payments of $155.98."[1] The "total of scheduled payments" is also listed as $12,790.36, but the Agreement notes, "This total does not include additional charges which might be made during the Agreement listed below, such as taxes, title transfer, and licensing fees." The Agreement provided for a late payment charge and reinstatement fees. The late payment charge was $15 for each payment not received within one business day of the payment due date. The fee to reinstate the lease if it terminated was $225. The additional charges listed on the Agreement include an origination fee in the amount of $975, which is described as a nonrefundable fee "charged by us for processing the Lease transaction." The Agreement also provides for the following additional charges: (1) $1,066.82 in sales tax payable to the state of Ohio; (2) $15 for title transfer; and (3) $55 for licensing.

{¶ 12} Goree also executed a promissory note on July 30, 2009. The promissory note lists $1,288.63 as the total due at signing. It reflects a down payment in the amount of $800, leaving $488.63 due by September 28, 2009. Apparently, Goree would pay the $488.63 by adding about $81.44 to the first six bi-weekly payments. Pursuant to the promissory note, $12.09 was added to each bi-weekly payment to cover the sales tax. The promissory note also shows a charge of $10.78, but the reason for the charge is not identified. Goree alleges that the charge

---

[1] As the trial court noted, $155.98 x 82 = $12,790.36.

reflects an additional undisclosed monthly fee for loaner car insurance. The payment book reflects that a $10 fee was added to each biweekly payment.

{¶ 13} The payment book Goree received reflects that the charges for the car insurance (at or about $10.78) and the sales tax (at or about $12.09) were added to the biweekly base payment of $155.98 reflected on the Agreement, raising the actual total base biweekly payment to $178.84.[2] In addition, for the first six payments, $81.44 was added to each payment to cover the remaining amount due at signing, temporarily raising the total due to $260.28 for those six payments.

{¶ 14} Goree also executed an addendum to the Agreement. The addendum authorized North Coast to track the vehicle using a GPS device. In the event Goree defaulted on her payments, North Coast could use the GPS device to disable the starting system of the vehicle. The addendum further provided that the GPS device was "required as a condition of approving our extension of credit to you" but "is not being sold with the Vehicle."

{¶ 15} Goree also purchased an extended warranty. The warranty form provides several options. There is a check mark denoting the option for a 2 years/30,000 miles term for vehicles with 0-100,000 miles at $389. However, the total amount due on Goree's warranty claim is listed as $399, which is the price for a 2 years/30,000 miles term for vehicles with 100,001-140,000 miles.

---

[2] As the trial court noted in its judgment entry, there are slight discrepancies in these amounts throughout the documents.

### D. Class Allegations

{¶ 16} Goree alleges that many of the charges associated with her lease were imposed unlawfully and without proper disclosure. She alleges that (1) the $925 origination fee exceeded the maximum amount permitted in R.C. 1317.07, which is $250; (2) the amount she was charged for sales tax, title transfer, and license fees was greater than what was actually remitted to the state; (3) the $239 cost of the GPS was built into the cash price of the $12,790.36, but was not disclosed to her nor reflected on the Agreement or promissory note; and (4) she was required to purchase the $399 warranty, rental insurance, and the GPS device even though those charges were not separately disclosed, but rather were rolled into the cash price of the vehicle.

{¶ 17} The class complaint raises four causes of action against Appellants: (1) Violation of Ohio Adm.Code 109:4-3-16(B)(21), Ohio's Consumer Practices Act ("OCSPA"), R.C. 1345.01, et seq.; (2) misrepresentation and fraud; (3) civil conspiracy; and (4) violation of Cleveland's Unfair, Deceptive, and Unconscionable Trade Practices Ordinance, Cleveland Codified Ordinances 643.02.

#### 1. Consumer Protection Claims

{¶ 18} Counts 1 and 4 are both consumer protection claims. Count 1 is raised under OCSPA, R.C. 1345.02 and 1345.03. Count 2 is raised under the Codified Ordinances of the City of Cleveland ("Ordinances"). The Ordinances similarly prohibit "any unfair, deceptive or unconscionable consumer trade practice in the sale, lease, rental or loan, or in the offering for sale, lease, rental or loan of any

consumer goods or services." Cleveland Codified Ordinances 643.02. The Ordinances define "unconscionable trade practices" to mean

> any act, omission or practice undertaken by a merchant which unfairly takes advantage of the lack of knowledge, ability, experience or capacity of a consumer; or results in a gross disparity between the value received by a consumer and the price paid, to the consumer's detriment.

> 'Unconscionable trade practices' shall also mean any act or practice declared unconscionable by statute, by regulation, by decision of a judicial body or administrative body in the State of Ohio, or by a rule or regulation promulgated by the regulation promulgated by the Director.

{¶ 19} The OCSPA prohibits "an unfair or deceptive act or practice in connection with a consumer transaction" and "an unconscionable act or practice in connection with a consumer transaction." R.C. 1345.02(A). The complaint specifically alleges Appellants' conduct violated section 109:4-2-16(B)(21) of the Ohio Administrative Code, which provides, in relevant part:

> (B) It shall be a deceptive and unfair act or practice for a dealer, manufacturer, advertising association, or advertising group, in connection with the advertisement or sale of a motor vehicle, to:

> (21) Advertise any price for a motor vehicle unless such price includes all costs to the consumer except tax, title, and registration fees, and a documentary service charge, provided such charge does not exceed the maximum documentary service charge permitted to be charged pursuant to section 1317 of the Revised Code.

{¶ 20} Pursuant to R.C. 1317.07, the maximum documentary service charge may not exceed $250. The complaint alleges that Appellants charged excessive documentary fees disguised as the origination fee. It further alleges that Appellants violated the OCSPA and the Ordinances by routinely including an extended

warranty, GPS device, and rental insurance into the cash price of the vehicle without disclosing them to Goree or the putative class members.

### 2. Fraud or Misrepresentation

{¶ 21} Count 2 of the complaint alleges that Appellants systematically, through the Ren'T'Own program, misrepresented or failed to disclose the true cash price of vehicles sold to Goree and the putative class members. Appellants allegedly did so by routinely rolling the extended warranty, GPS device, and rental insurance into the cash price of the vehicle without disclosing those costs.

### 3. Conspiracy

{¶ 22} Count 3 of the complaint alleges that Appellants conspired to commit fraud and violate state laws through the Ren'T'Own program. The complaint alleges that Northland's guidelines, instructions, and promotional materials under the Ren'T'Own program instructed North Coast and other Ohio car dealers to include the cost of an extended warranty, GPS device, and rental insurance in the cash price of vehicles without disclosing those costs on the face of the lease forms. It also alleges that Northland provided the forms to allow North Coast and other dealers to carry out this scheme. The Appellants allegedly used the Ren'T'Own program to target individuals with low incomes or poor credit.

## II. PROCEDURAL BACKGROUND

{¶ 23} Goree filed her complaint against Appellants on June 20, 2011. The original complaint was not a class action. North Coast moved to stay proceedings and compel arbitration on August 3, 2011. Northland, North Coast, and Lentsch

answered on August 3, 2011. Goree moved for leave to file a first amended class action complaint on October 14, 2011. The court granted leave on November 8, 2011, and Goree filed the first amended complaint the next day. The Appellants answered the class action complaint on November 28, 2011, and filed an amended answer on January 13, 2012.

{¶ 24} On November 5, 2012, Lentsch moved to dismiss for lack of personal jurisdiction or, alternatively, for judgment on the pleadings. On January 30, 2014, the court denied the motion to compel arbitration in part and reserved ruling on the alleged unconscionability of the arbitration clause until after a hearing. Defendants appealed that order on December 27, 2014, but we dismissed the appeal sua sponte on July 16, 2014, because the trial court had only ruled on part of the motion to compel. On February 23, 2017, North Coast moved to withdraw its motion to compel arbitration. The court granted that motion on March 3, 2017.

{¶ 25} The defendants then moved to dismiss, or, alternatively, grant judgment on the pleadings on May 8, 2017. The motion sought dismissal under Civ.R. 12(B)(2), 12(B)(6), and R.C. 2307.382. It argued, in part, that the court lacked personal jurisdiction over the defendants. The trial court denied the motion on July 31, 2017. Appellants did not appeal that ruling.

{¶ 26} Goree filed her motion for class certification on January 31, 2018. Appellants filed an opposition to class certification on April 23, 2018. Goree replied to the opposition on April 30, 2018. The trial court granted class certification on

July 11, 2019. It concluded that Goree satisfied the requirements of Civ.R. 23(A) and (B)(3), but not 23(B)(2) and certified two classes:

> The Fraud Class – All Ohio residents, who from June 21, 2007, to the present, entered into a transaction to purchase, rent or lease a vehicle from any Ohio dealer that utilizes Northland's Ren'T'Own program, where:
>
> a. the cash price of the vehicle included charges for goods or services that are in addition to the cost of the vehicle, and/or;
>
> b. the amount charged for the title transfer and/or license fees is in excess of the amount actually paid to the State of Ohio, and/or;
>
> c. the charge for an origination fee exceeded $250.
>
> The CSPA Class – All Ohio residents, who from June 21, 2009, to the present, entered into a transaction to purchase, rent or lease a vehicle from any Ohio dealer that utilized Northland's Ren'T'Own program, where:
>
> a. the case price of the vehicle included charges for goods or services that are in addition to the cost of the vehicle, and/or;
>
> b. the amount charged for the title transfer and/or license fees is in excess of the amount actually paid to the State of Ohio, and/or;
>
> c. the charge for an origination fee exceeded $250.

{¶ 27} This appeal follows. Appellants have raised the following three assignments of error:

### Assignment of Error No. 1

The trial court erred in finding it had personal jurisdiction over Northland, Al Lentsch, and or LTO.

### Assignment of Error No. 2

The trial court abused its discretion when it determined that Ms. Goree met the requirements of class certification pursuant to Civ.R. 23(A).

The trial court abused its discretion when it found that Plaintiff met the requirements of class certification under Civ.R. 23(B)(3).

## III.   LAW AND ANALYSIS

### A.     Personal Jurisdiction

{¶ 28} Appellants first argue that the trial court erred in finding it had personal jurisdiction over them.  Goree counters that the issue of personal jurisdiction is not properly before this court and that Appellants have improperly attempted to bootstrap personal jurisdiction to the trial court's resolution of the class certification motion.  In response, Appellants argue that personal jurisdiction is a predicate issue so intertwined with the court's class certification determination that it is properly on appeal.  We find that the issue of personal jurisdiction is not properly before this court.

{¶ 29} The Ohio Constitution limits appellate jurisdiction to the review of final judgments of lower courts.  Ohio Constitution, Article IV, Section 3(B)(2).  R.C. 2505.02(B)(4) lists the types of orders that qualify as final, appealable orders.  An order denying a motion to dismiss for lack of personal jurisdiction is not a final, appealable order and cannot be reviewed by this court.  *Nejman v. Charney*, 8th Dist. Cuyahoga No. 102584, 2015-Ohio-4087, ¶ 27.

{¶ 30} Appellants moved the trial court for dismissal under Civ.R. 12(B)(2) for lack of personal jurisdiction.  The trial court denied that motion, and Appellants did not appeal that ruling.  Appellants' opposition to Goree's motion for class certification did not raise any personal jurisdiction arguments.  The trial court

granted Goree's motion for class certification. The class certification order did not include a ruling on personal jurisdiction. Appellants filed a notice of appeal of only the class certification order. The only ruling regarding personal jurisdiction was relative to the denied motion to dismiss, from which Appellants did not appeal and which is not a final, appealable order. *Id.* Therefore, we find that the issue of personal jurisdiction is not properly before us on appeal.

{¶ 31} Appellants nevertheless argue that personal jurisdiction is properly before this court because it is a predicate issue so "inextricably intertwined" with the issue of class certification that it must be reviewed with the trial court's determination of class certification. They direct us to two cases that found a review of predicate issues necessary to review a class certification: *Unifund CCR Partner v. Piaser*, 11th Dist. Ashtabula No. 2016-A-0076, 2019-Ohio-183 and *Satterfield v. Ameritech Mobile Communications, Inc.*, 155 Ohio St.3d 463, 2018-Ohio-5023, 122 N.E.3d 144. In *Unifund*, the 11th District determined that whether Ohio's or New Jersey's statute of limitations applied was a predicate issue to its review of class certification. But, unlike personal jurisdiction here, the statute of limitations was part of the trial court's rationale in denying class certification. *Unifund* at ¶ 23. In *Satterfield*, the Ohio Supreme Court reviewed the predicate issue of whether the class could recover statutory treble damages in reversing a class certification. However, the treble damages issue in *Satterfield*, unlike personal jurisdiction here, substantively affected whether the class had brought a valid claim. *Satterfield* at ¶ 23.

{¶ 32} While we recognize that personal jurisdiction was a necessary predicate to the trial court's class certification ruling, that could be said about any ruling following a decision on personal jurisdiction. We are not persuaded in this instance that a review of personal jurisdiction is necessary to review the class certification decision from which Appellants appealed. Appellants' first assignment of error is overruled.

## B. Class Actions and Standard of Review

{¶ 33} Civ.R. 23 governs class actions. It provides seven requirements to maintain a class action:

> (1) an identifiable class must exist and the definition of the class must be unambiguous; (2) the named representatives must be members of the class; (3) the class must be so numerous that joinder of all members is impracticable; (4) there must be questions of law or fact common to the class; (5) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; (6) the representative parties must fairly and adequately protect the interests of the class; and (7) one of the three Civ.R. 23(B) requirements must be met.

*Cullen v. State Farm Mut. Auto. Ins. Co.*, 137 Ohio St.3d 373, 2013-Ohio-4733, 999 N.E.2d 614, ¶ 15, quoting *Stammco, L.L.C. v. United Tel. Co. of Ohio*, 125 Ohio St.3d 91, 2010-Ohio-1042, 926 N.E.2d 292, ¶ 6.

{¶ 34} The party seeking class certification under Civ.R. 23 must demonstrate "by a preponderance of the evidence that the proposed class meets each of the requirements set forth in the rule." *Id.* at ¶ 15. A trial court determining whether to certify a class under Civ.R. 23 must conduct a rigorous analysis, resolve factual disputes related to each element, and may only grant certification after finding that all requirements of the rule are satisfied. *Id.* at ¶ 16. The trial court is

to resolve any doubts in favor of class certification. *Baughman v. State Farm Mut. Auto. Ins. Co.*, 88 Ohio St.3d 480, 487, 727 N.E.2d 1265 (2000). While class action certification does not resolve the merits of the action, certification requires the trial court to consider what must be proved at trial and whether those issues can be presented by common proof. *Cullen* at ¶ 17.

{¶ 35} The Ohio Supreme Court has set forth the standard of review we apply when reviewing class action certifications:

> A trial judge has broad discretion in determining whether a class action may be maintained and that determination will not be disturbed absent a showing of an abuse of discretion.

> A trial court, however, abuses its discretion when its decision is unreasonable, arbitrary, or unconscionable. This standard applies to the ultimate decision of the trial court, as well as to its determination regarding each requirement of the rule.

> However, as we clarified in *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, "[i]n a civil case, in which the burden of persuasion is only by a preponderance of the evidence, rather than beyond a reasonable doubt, evidence must still exist on each element (sufficiency) and the evidence on each element must satisfy the burden of persuasion (weight)." *Id.* at ¶ 19.

(Quotations and citations omitted.) *Cullen* at ¶ 19-20.

{¶ 36} Civ.R. 23 is virtually identical to Fed.R.Civ.P. 23. Accordingly, Ohio courts may look to federal authority to interpret the Ohio rule. *Cullen* at ¶ 14.

{¶ 37} This appeal challenges the trial court's determination that the proposed class met the requirements of Civ.R. 23(A) and 23(B)(3). We address both rules in turn and find that the trial court did not abuse its discretion in any aspect of its determination.

## C.    *Cullen* Standard

{¶ 38} Before addressing the merits of class certification under Civ.R. 23, we first address Appellants' argument that the trial court applied the wrong standard. Appellants contend that the trial court improperly accepted all the allegations as true and resolved all doubts in favor of class certification without finding that "sufficient evidence proves that all requirements of Civ.R. 23 have been satisfied," as set forth by the Ohio Supreme Court in *Cullen v. State Farm Mut. Auto. Ins. Co. Cullen* at ¶ 2.  We find no merit to this argument.

{¶ 39} As Appellants note, the trial court cited the *Cullen* standard in its judgment entry.  We see no reason to conclude that the trial court did not follow that standard.  The trial court not only reviewed the allegations in the complaint, but also reviewed the Agreement and other documents related to Goree's lease and the Ren'T'Own program.  These documents lend evidentiary support to the allegations in the complaint.  Accordingly, we find that the trial court's judgment entry demonstrates a careful consideration of the relevant facts, applicable law, and evidence and thus satisfies the *Cullen* standard.

## D.    Civ.R. 23(A)

{¶ 40} Civ.R. 23(A) provides:

Prerequisites.  One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class,

(4) the representative parties will fairly and adequately protect the interests of the class.

{¶ 41} To summarize, Appellants argue that class certification is not permissible because (1) each class member signed a different agreement; (2) each class member negotiated individually with a sales representative; (3) dealers are not required to include the same terms in all agreements, specifically the GPS device; and (4) each class member's damages are individualized and unique. In addition, Appellants argue that the putative class members cannot prove justifiable reliance with common proof to sustain a class action fraud claim.[3]

### 1. Identifiability

{¶ 42} Civ.R. 23(A) implicitly requires that an identifiable and unambiguous class exists before certification is permissible. *Warner v. Waste Mgt.*, 36 Ohio St.3d 91, 96, 521 N.E.2d 1091 (1988). The Ohio Supreme Court has explained

> The definition of the class must be unambiguous. Classes such as "all people active in the peace movement," "all people who have been or may be harassed by the police" and "all poor people," are too amorphous to permit identification within a reasonable effort and thus may not be certified.

---

[3] For the first time in its reply brief, Appellants also argue that no class action can be certified against Northland, Lentsch, and LTO because they were not alleged to have "supplied" anything to consumers as defined under the OCSPA and do not qualify as suppliers under the OCSPA. As Appellants raised this argument for the first time in its reply brief, they have waived the argument. *In re Am. Transm. Sys.*, 125 Ohio St.3d 333, 2010-Ohio-1841, 928 N.E.2d 427, ¶ 35, citing *State ex rel. Colvin v. Brunner*, 120 Ohio St.3d 110, 2008-Ohio-5041, 896 N.E.2d 979, ¶ 61. The waiver doctrine forecloses our consideration of this argument. *Harris Design Servs. v. Columbia Gas of Ohio, Inc.*, 154 Ohio St.3d 140, 2018-Ohio-2395, 112 N.E.3d 858, ¶ 17.

*Id.*

{¶ 43} The "class definition must be precise enough 'to permit identification within a reasonable effort.'" *Hamilton v. Ohio Sav. Bank*, 82 Ohio St.3d 67, 71-72, 694 N.E.2d 442 (1998), quoting *Warner* at 96. "The test is whether the means is specified at the time of certification to determine whether a particular individual is a member of the class." *Hamilton* at 74. Whether different factual or legal issues will defeat certification "does not enter into the analysis until the court begins to consider the Civ.R. 23(B)(3) requirements of predominance and superiority." *Washington v. Spitzer Mgt.*, 8th Dist. Cuyahoga No. 81612, 2003-Ohio-1735, ¶ 16, quoting *Hamilton* at 74.

{¶ 44} The trial court found that class members could be easily identified using Northland and North Coast's records and that the two class definitions were unambiguous. Appellants argue that the class definitions are overly broad because the only way to determine whether certain charges were not disclosed to class members would require that each agreement be analyzed and each class member interviewed. They further argue that determining the scope of the class is impractical because not all dealerships require customers to purchase the GPS device that Goree claims was included in the cost of her vehicle.

{¶ 45} We find that the trial court did not abuse its discretion in holding that the class here was identifiable and unambiguous based on a reasonable review of the Appellants' own records. Plaintiffs allege that Appellants used a preset scheme, the Ren'T'Own program, to unlawfully charge class members excessive amounts. The

two classes are limited to those whose agreements reflect at least one of the following: (1) included charges for goods or services in addition to the cost of the vehicle in the cost of the vehicle; (2) charged excess fees for title transfer or license fees; and/or (3) charged an origination fee that exceeded $250. These charges are identified in the class definitions so that class members can be feasibly determined by reviewing Appellants' records of Ren'T'Own agreements from the specified time periods. *See Spitzer* at ¶ 18 (class was identifiable and unambiguous where class membership could be determined by whether defendant-dealer's materially similar form lease agreements showed a charge for "dealer overhead").

{¶ 46} Appellants direct us to a Tenth District case, *Bungard v. Dept. of Job & Family Servs.*, 10th Dist. Franklin No. 05Ap-43, 2006-Ohio-429, ¶ 15, to argue that the class definitions would require the court to assess the facts and circumstances surrounding each individual claim by interviewing each customer to determine whether Appellants disclosed the charges Goree identified in the complaint. In *Bungard,* the plaintiff defined class members as those who did not receive child support services from the defendant that complied with the law and claimed that class members could be identified by reviewing the defendant's records. The defendant's records, however, would have only revealed who received services from the county. The records would not have revealed whether the services provided were unlawful because the plaintiff failed to identify any uniform practices or customs by the defendant that were allegedly unlawful. *Id.* at ¶ 16.

{¶ 47} In contrast, Goree has identified specific, uniform practices of the Appellants, which Goree alleged caused injury to the defined classes. Appellants' records will unambiguously identify the individuals whose agreements did not disclose the certain hidden costs Goree identified.

{¶ 48} Appellants also argue that it would be impracticable to determine the scope of the class because Goree's agreement may be different from every other customer's agreement. They specifically argue that the GPS device that Goree claims was included in her vehicle without being identified as a cost, may not have been included and nondisclosed on other customers' agreements. Appellants' argument does not defeat the identifiability requirement for at least two reasons.

{¶ 49} First, individualized fact-finding only defeats identifiability when the cause of the problem is an overly broad class definition. *Cantlin v. Smythe Cramer Co.*, 2018-Ohio-4607, 114 N.E.3d 1260, ¶ 19 (8th Dist.). We do not find that the trial court abused its discretion in finding that class members could be identified based on a review of Appellants' records and that the definitions are not overbroad. Second, all class members need not be victim to the exact same unlawful charges. Rather, class members need only have been victim to the alleged unlawful practice of not disclosing all costs. That individual losses may be different among class members does not defeat certification. *Binder v. Cuyahoga Cty.*, 2019-Ohio-1236, 134 N.E.3d 807, ¶ 122 (8th Dist.).

## 2. Numerosity

{¶ 50} Civ.R. 23(A)(1) provides that "one or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable * * * ." The trial court found that the classes are so numerous that joinder of all members is impracticable, thus satisfying Civ.R. 23(A)(1). It reasoned that Goree, relying on Northland's website and the number of Ohio dealerships that utilized the Ren'T'Own program, estimated the number of class members to be in the hundreds or thousands and cited authority that classes of 40 or more members can satisfy the numerosity requirement. R. 106 at 7, citing *Warner*, 36 Ohio St.3d at 97, 521 N.E.2d 1091. Appellants do not argue that this ruling was an abuse of discretion, and we do not find otherwise.

## 3. Commonality and Typicality

{¶ 51} Although the trial court made separate findings on commonality and typicality, Appellants address those elements together. They argue that commonality and typicality are not supported by the preponderance of the evidence because each class member's contract could be different. They further contend that commonality and typicality are defeated because each customer and sales representative would have to be interviewed to determine the merits of each class member's claim. Appellants further argue that calculating damages would be impracticable as damages would vary based on the value of each vehicle, the alleged markup by the dealer, and any undisclosed charges added to the purchase price of the vehicle.

{¶ 52} The trial court found commonality satisfied because Goree would only have to establish once that Appellants misrepresented the price of the vehicles sold to class members by failing to disclose the inclusion of the warranty, GPS device, or rental insurance costs. The trial court found that typicality was satisfied because each class member's claim was based on the same legal theory and wrong; namely, that Appellants employed the Ren'T'Own program to charge unlawful or excessive fees to Goree and the other putative class members. We find that the trial court did not abuse its discretion in finding that the class claims satisfy commonality and typicality.

{¶ 53} "Commonality requires 'a common nucleus of operative facts.'" *Binder,* 2019-Ohio-1236, 134 N.E.3d 807, at ¶ 115, quoting *Warner* at 97. "Commonality may be found where the basis for liability is common to the proposed class or where a common factual question exists on issues of negligence, breach of contract, illegal practice, or other applicable causes of action[.]" *Binder* at ¶ 115, quoting *Berdysz v. Boyas Excavating, Inc.*, 2017-Ohio-530, 85 N.E.3d 288, ¶ 29 (8th Dist.); *Grant v. Becton Dickinson & Co.*, 10th Dist. Franklin No. 02AP-894, 2003-Ohio-2826, ¶ 36. Commonality is often "met without difficulty for the parties and very little time need be expended on it by the * * * judge." *Binder* at ¶ 115, quoting *Warner* at 97. Civ.R. 23(A)(2) "does not require commonality with respect to damages but merely that the basis for liability is a common factor for all class members." *Ojalvo v. Ohio State Univ. Bd. of Trustees*, 12 Ohio St.3d 230, 232, 466 N.E.2d 875 (1984).

{¶ 54} Commonality is satisfied here because the basis for Appellants' alleged liability for fraud and violation of Ohio's and Cleveland's consumer protection statutes is based on common factual questions — i.e., whether certain costs were disclosed in the sale price of the vehicle and whether excessive fees were charged. That damages may vary among class members does not destroy commonality regarding liability, which is all that is required under Civ.R. 23(A)(2). *Ojalvo* at 232. The trial court correctly identified a common nucleus of operative facts regarding liability. Appellants' commonality argument is meritless.

{¶ 55} "Typical" under Civ.R. 23(A)(3) does not mean "identical." *Binder* at ¶ 122, citing *Planned Parenthood Assn. of Cincinnati v. Project Jericho*, 52 Ohio St.3d 56, 64, 556 N.E.2d 157 (1990). Typicality "is met where there is no express conflict between class representatives and the class." *Binder* at ¶ 120, quoting *Hamilton v. Ohio Sav. Bank*, 82 Ohio St.3d 67, 77, 694 N.E.2d 442 (1998). "The purpose of the typicality requirement of Civ.R. 23(A)(3) is to protect the interests of absent class members." *Binder* at ¶ 120, citing *Hamilton* at 77-78. "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Baughman*, 88 Ohio St.3d at 485, 727 N.E.2d 1265. The Ohio Supreme Court has explained that

> a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory. When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be

represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims.

*Id.* at 485, quoting 1 Newberg, *Class Actions*, Section 3.13. at 3-74 to 3-77 (3d Ed.1992).

{¶ 56} Thus, a representative's claim need not be identical to those of all class members, but will be "typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Spitzer*, 2003-Ohio-1735 at ¶ 23.

{¶ 57} We do not find that the trial court abused its discretion in finding typicality where there is nothing in the record that demonstrates an express conflict between Goree's claims and the class-wide claims. Goree has alleged that the same common practices — failing to disclose certain costs included in the price of vehicles or charging excessive fees — gave rise to all the claims alleged. The claims are also all based on the same legal theories: fraud or misrepresentation or violations of consumer protection laws. That putative class members may have slightly different agreements and negotiated with different sales representatives does not amount to a conflict between Goree and the class where the alleged nondisclosures are based on common practices and support the same legal theories across the class. Likewise, individualized damage calculations do not render the claims atypical. *Binder* at ¶ 122 ("disparate damages does not bar a class from certification" for lack of typicality).

#### 4.    Adequacy of representation

{¶ 58} "A class representative is considered adequate as long as its interest is not antagonistic to the interest of other class members." *Spitzer* at ¶ 28, citing *Hamilton*, 82 Ohio St.3d at 77, 78, 694 N.E.2d 442.  The trial court determined that Goree and her counsel did not have any conflicts of interest with other class members; that Goree's pursuit of her own claims will also advance the interests of the class; and that Goree's counsel is qualified and experienced in class action lawsuits.  Appellants do not argue that this ruling was an abuse of discretion and we do not find otherwise.

{¶ 59} Having found that the trial court did not abuse its discretion in finding that the requirements of Civ.R. 23(A) are met, Appellants' second assignment of error is overruled.

#### E.    Civ.R. 23(B)(3)

{¶ 60} "A trial court judge must find that one of the three Civ.R.(B) requirements is met before a class may be certified." *Warner*, 36 Ohio St.3d at 94, 521 N.E.2d 1091.  The trial court certified the class solely pursuant to Civ.R. 23(B)(3), which provides:

> (B) Types of class actions.  A class action may be maintained if Civ.R. 23(A) is satisfied, and if:

> (3) the court finds that the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

> The matters pertinent to these findings include:  (a) the class members' interests in individually controlling the prosecution or defense of

separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action.

{¶ 61} Thus, Civ.R. 23(B)(3) requires two findings by the trial court: (1) that common questions predominate over questions affecting only individual members and (2) that a class action is superior to other available methods for the adjudication of the controversy. *Warner* at 96; *Spitzer*, 2003-Ohio-1735 at ¶ 38.

### 1. Predominance

{¶ 62} "For common questions of law and fact to predominate, it is not sufficient that such questions merely exist; rather, they must represent a significant aspect of the case. Furthermore, they must be capable of resolution for all members in a single adjudication." *Cantlin*, 2018-Ohio-4607, 114 N.E.3d 1260, at ¶ 33, quoting *Marks v. C.P. Chem. Co.*, 31 Ohio St.3d 200, 204, 509 N.E.2d 1249 (1987). The Ohio Supreme Court has further explained that

> deciding whether a claimant meets the burden for class certification pursuant to Civ.R. 23 requires the court to consider what will have to be proved at trial and whether those matters can be presented by common proof. * * * Thus, * * * in resolving a factual dispute when a requirement of Civ.R. 23 for class certification and a merit issue overlap, a trial court is permitted to examine the underlying merits of the claim as part of its rigorous analysis, but only to the extent necessary to determine whether the requirement of the rule is satisfied.

*Cullen*, 137 Ohio St.3d 373, 2013-Ohio-4733, 999 N.E.2d 614, at ¶ 17.

{¶ 63} The trial court rigorously reviewed what Goree would have to prove at trial to succeed on the consumer protection, fraud or misrepresentation, and conspiracy claims to determine whether questions of fact or law common to class

members predominate over individual questions. The trial court considered whether common questions predominate each of the class claims. We find that the trial court did not abuse its discretion in finding the predominance element satisfied.

### a. Consumer Protection and Fraud or Misrepresentation Claims

{¶ 64} We address the consumer protection and fraud or misrepresentation claims together because Appellants' primary argument for denying class certification is that individualized inquiries dominate the reliance element for both claims and render the trial court's finding of predominance an abuse of discretion.

### (1) Elements of Consumer Protection Claims

{¶ 65} The OCSPA specifically authorizes, and even encourages, consumer class actions. *Spitzer*, 2003-Ohio-1735 at ¶ 32, citing R.C. 1345.09(B). "The statutory elements of a violation n of the Consumer Sales Practices Act are: (1) the plaintiff is a consumer; (2) the defendant is a supplier; (3) the defendant committed an unfair and/or deceptive and/or unconscionable act or practice; and the act or practice occurred before, during, or after the consumer transaction." *Williams v. Am. Suzuki Motor Corp.*, 5th Dist. Stark No. 2007-CA-00172, 2008-Ohio-3123, ¶ 32; R.C. 1345.01 *et seq.* "Whether it be termed an issue of reliance or an issue of proximate cause, an appropriate rule is that where the defendant is alleged to have made material representations or misstatements, there must be a cause and effect relationship between the defendant's acts and the plaintiff's injuries." (Citation omitted.) *Williams v. Boston Scientific Corp.*, N.D.Ohio No. 3:12CV1080, 2013 U.S. Dist. LEXIS 43427, *18-19 (Mar. 27, 2013).

{¶ 66} Similar to the OCSPA, Cleveland's Ordinances prohibit unfair, deceptive or unconscionable consumer trade practice in the offering of/sale, lease, rental or loan of any consumer goods or services. Cleveland Codified Ordinances 643.02. Under the Ordinances

> "Unconscionable trade practices" means any act, omission or practice undertaken by a merchant which unfairly takes advantage of the lack of knowledge, ability, experience or capacity of a consumer; or results in a gross disparity between the value received by a consumer and the price paid, to the consumer's detriment. "Unconscionable trade practices" shall also mean any act or practice declared unconscionable by statute, by regulation, by decision of a judicial body or administrative body in the State of Ohio, or by a rule or regulation promulgated by the regulation promulgated by the Director.

Cleveland Codified Ordinances 641.12.

{¶ 67} In finding that common issues predominated the consumer protection claims, the trial court reasoned that "any individual falling within the class definition was party to a transaction where one or more of the allegedly unlawful acts was committed" and that the class need only prove one time that the alleged conduct violated the applicable consumer protection laws.

### (2) Elements of Fraud or Misrepresentation Claim

{¶ 68} "The elements of fraud are: (a) a misrepresentation or concealment of fact; (b) that is material to the transaction at hand; (c) made falsely, with knowledge of its falsity or with utter disregard and recklessness as to whether it is false; (d) with the intent of misleading another into relying upon it; (e) justifiable reliance upon the misrepresentation or concealment; and (f) resulting injury

proximately caused by the reliance." *Cantlin*, 2018-Ohio-4607, 114 N.E.3d 1260, at ¶ 37, citing *Cohen v. Lamko, Inc.*, 10 Ohio St.3d 167, 169, 462 N.E.2d 407 (1984).

{¶ 69} The trial court found that common issues predominate the fraud claim because whether the alleged fraudulent acts amount to a misrepresentation can be determined based on a review of class members' lease documents. The complaint identifies certain common misrepresentations or nondisclosures made to Goree and putative class members in connection with vehicle leases through the Ren'T'Own program.

### (3) Justifiable Reliance

{¶ 70} Appellants take issue with the reliance element of the consumer protection and fraud or misrepresentation claims and argue that the claims cannot be certified because each customer's agreement was unique and based on an individualized negotiation with a different sales representative. Appellants contend that the element of justifiable reliance requires individualized proof, which defeats predominance. In support of their position, Appellants argue that the trial court's reliance on *Cope v. Metro. Life Ins. Co.* is misplaced. *Cope v. Metro. Life Ins. Co*, 82 Ohio St.3d 426, 696 N.E.2d 1001 (1998). We disagree and find that the trial court did not abuse its discretion in finding that Goree has raised common misrepresentations across the class that satisfy the predominance element of Civ.R. 23(B)(3).

{¶ 71} The Ohio Supreme has reversed the denial of class certification in consumer fraud cases where it found that reliance could be presumed or inferred

because form documents or standardized practices formed the basis of the alleged fraud. *Baughman*, 88 Ohio St.3d 480, 727 N.E.2d 1265; *Cope*, 82 Ohio St.3d 426, 696 N.E.2d 1001; and *Hamilton*, 82 Ohio St.3d 67, 694 N.E.2d 442.

{¶ 72} We have similarly held that justifiable reliance in a class claim "may be sufficiently established by inference or presumption from circumstantial evidence to warrant submission to a jury without direct testimony from each member of the class." *Cantlin*, 2018-Ohio-4607, 114 N.E.3d 1260, at ¶ 40, quoting *Amato v. Gen. Motors Corp.*, 11 Ohio App.3d 124, 128, 463 N.E.2d 625 (8th Dist.1982). We further explained that

> It is not necessary to establish inducement and reliance upon material omissions by direct evidence. When there is nondisclosure of a material fact, courts permit inferences or presumptions of inducement and reliance. Thus, *cases involving common omissions across the entire class are generally certified* as class actions, notwithstanding the need for each class member to prove these elements.

(Emphasis added.) *Cantlin* at ¶ 40, quoting *Cope* at 436.

{¶ 73} We have also previously summarized the facts of *Cope*, which Appellants argue forecloses class certification here:

> [T]he plaintiff-consumers alleged that defendant-life insurance companies had omitted a required disclosure from form documents in furtherance of their scheme to obtain higher commissions by selling existing MetLife policyholders policies that were classified as new when, in fact, the policies were replacement policies that should have been classified and charged for as such. The trial court and the court of appeals found that the plaintiffs had failed to satisfy Civ.R. 23(B)'s predominance and superiority requirements because an individual scrutiny of each transaction would be required to determine what the plaintiffs were told by their respective agents.

*Spitzer*, 2003-Ohio-1735 at ¶ 42.

**{¶ 74}** In *Cope*, the Ohio Supreme Court rejected the defendants' arguments and concluded that the trial court had abused its discretion in denying class certification because the case involved "the use of form documents, standardized practices and procedures, common omissions spelled out in written contracts, and allegations of a widespread scheme to circumvent statutory and regulatory disclosure requirements * * *." *Spitzer* at ¶ 43, quoting *Cope* at 437. The court also noted that courts "generally find that a wide variety of claims may be established by common proof in cases involving similar form documents or the use of standardized procedures and practices." *Id.*, quoting *Cope* at 430.

**{¶ 75}** Appellants ask us to read *Cope*, Ohio St.3d 426, 696 N.E.2d 1001, too narrowly and hold that class certification must be denied because there might be slight variances in each class member's lease documents. *Cope*, however, contemplated class claims "involving similar form documents or the use of standardized procedures and practices," which is exactly what the complaint alleges. *Cope* at 430. Thus, in this instance, the court did not abuse its discretion in finding that justifiable reliance did not require individualized evidence.

**{¶ 76}** Appellants' argument overlooks the nature of Goree's allegations as they relate to the fraud or misrepresentation claim. This is not a case where a different misrepresentation was allegedly made to each individual member of the class. The alleged material misrepresentations identified in the class definitions are not so varied as to preclude a presumption of reliance on a class-wide basis. The allegations here identify a common practice by which Appellants allegedly

perpetrated fraud and the class definitions identify specific misrepresentations or omissions Appellants allegedly made. Contrary to Appellants' argument, justifiable reliance is not a "completely individual determination" here and can be presumed because the complaint alleges, with supporting documents attached, that the Ren'T'Own program is a standardized procedure or practice by which Appellants systematically and fraudulently overcharged class members in violation of statutory and regulatory disclosure requirements. Thus, where all the claims revolve around Appellants' Ren'T'Own program and the class definitions identify common misrepresentations and omissions, predominance is not defeated by possible variances in each putative class member's lease documents or negotiations with a sales representative.

{¶ 77} The trial court may be presented with different evidence relating to different car dealer's overcharges or nondisclosures. But the mere fact that some evidence as to different transactions may need to be gathered to determine the amount of damages does not defeat the predominance inquiry. *Spitzer*, 2003-Ohio-1735 at ¶ 48. *See also Begala v. PNC Bank, Natl. Assn.*, 1st Dist. Hamilton No. C-990033, 1999 Ohio App. LEXIS 6331, *13-16 (Dec. 30, 1999) (rejecting defendant-bank's argument that common issues did not predominate because bank representatives could have made additional oral statements to individual class members where bank's form letter to putative class members was materially identical); *Pyles v. Johnson*, 143 Ohio App.3d 720, 758 N.E.2d 1182 (4th Dist.2001) (finding predominance where fact and law issues arose from the defendant's use of

similar form contracts and business practices). Thus, we find that the trial court did not abuse its discretion in finding that common questions predominate the consumer protection and fraud claims.

### b. Conspiracy Claim

{¶ 78} "To establish a civil conspiracy claim, the plaintiff must prove: '(1) a malicious combination of two or more persons, (2) causing injury to another person or property, and (3) the existence of an unlawful act independent from the conspiracy itself.'" *Bentkowski v. Trafis*, 2015-Ohio-5139, 56 N.E.3d 230, ¶ 50 (8th Dist.), quoting *Kelley v. Buckley*, 193 Ohio App.3d 11, 2011-Ohio-1362, 950 N.E.2d 997, ¶ 70 (8th Dist.), citing *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 700 N.E.2d 859 (1998).

{¶ 79} The trial court found that common issues also predominate the civil conspiracy claim because the claim only depends on the acts of the Appellants and would not require proof related to individual class members. Appellants do not take issue with this finding, and we do not find that the trial court abused its discretion on this point.

### c. Damages

{¶ 80} Damages is a common element to each claim. The complaint alleges that Goree and the putative class members suffered damages by entering into lease transactions through the Ren'T'Own program that charged them unlawful charges. Appellants argue throughout their brief that class certification is improper because damages will have to be calculated separately for each class member based on

unique vehicle prices and lease terms and because some class members may have terminated their leases early.

{¶ 81} To satisfy predominance, the class plaintiff need only establish that all class members were injured, not that all class members suffered damages in the same amount. *Estate of Mikulski v. Centerior Energy Corp.*, 2019-Ohio-983, 133 N.E.3d 899, ¶ 45 (8th Dist.), citing *Felix v. Ganley Chevrolet, Inc.*, 145 Ohio St.3d 329, 2015-Ohio-3430, 49 N.E.3d 1224, ¶ 34. Thus, the need for an individualized inquiry to determine the amount of damages does not destroy predominance.

{¶ 82} The trial court acknowledged that "particularized evidence will be required to calculate the amount of damages owed to each class member," but otherwise reasoned that because any individual falling into one of the class definitions was subject to allegedly unlawful charges, the only element left to prove for the consumer protection claims is whether the alleged conduct violated consumer protection laws. As discussed, whether Appellants' conduct violated consumer protection laws can be proved with common evidence. The trial court did not expressly consider damages as to the fraud or misrepresentation and civil conspiracy claims, but its reasoning regarding consumer protection law damages applies to the other claims as well.

{¶ 83} The class definitions sufficiently ensure that each class member has suffered injury as a result of Appellants' alleged conduct because they require that class members had entered into transactions that charged them unlawful amounts. *See Ritt v. Billy Blanks Ents.*, 171 Ohio App.3d 204, 2007-Ohio-1695, 870 N.E.2d

212 (8th Dist.). In *Ritt*, we affirmed class certification and rejected the appellants' argument that actual injury could only be proved through an individualized inquiry. *Id.* at ¶ 58. We determined that predominance was satisfied where class members' credit cards were charged after being read the same alleged deceptive upsell over the phone, in which it was promised they "won't be billed." *Id.* at ¶ 60-69. Relying largely on *Cope,* Ohio St.3d 426, 696 N.E.2d 1001, we concluded that the trial court did not abuse its discretion in finding that common claims predominated because the fraud and consumer protection claims could be established by common proof where it was alleged that "the same basic deceptive script" was used to defraud thousands of consumers. *Id.* at ¶ 69.

{¶ 84} Similarly, the existence of damages here can be determined by reviewing whether the class members' lease documents reflect the alleged unlawful charges identified in the class definitions. As the trial court reasoned, the class definitions ensure that only those who have suffered injury will be identified as class members. Differences in vehicle price and lease terms, or the fact that some class members may have terminated their leases early go to the amount of damages, rather than the existence of damages.

### 2. Superiority

{¶ 85} Civ.R. 23(B)(3) identifies a number of nonexhaustive factors a court should consider in determining whether a class action is a superior method of adjudicating a controversy:

> (a) the class members' interests in individually controlling the prosecution or defense of separate actions;

(b) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(d) the likely difficulties in managing a class action.

Civ.R. 23(B)(3); *State ex rel. Davis v. Pub. Emps. Retirement Bd.*, 111 Ohio St.3d 118, 2006-Ohio-5339, 855 N.E.2d 444, ¶ 28.

{¶ 86} The trial court concluded that a class claim would be superior to any other methods of adjudication. It analyzed the four factors set forth in Civ.R. 23(B)(3) and concluded the following: (1) It is unlikely that individuals would want to control separate actions since the class is mostly comprised of low-income individuals who are not likely to hire an attorney to pursue claims against sophisticated defendants; (2) there is no evidence of pending similar litigation; (3) it would be desirable to concentrate the litigation in one forum and (4) there are no peculiar difficulties that would affect the management of this action as a class action.

{¶ 87} Appellants argue that it will be difficult to manage this case as a class action because the damages calculation for each class member will vary depending on the vehicle and terms of the agreement.

{¶ 88} We find that the trial court did not abuse its discretion in finding that a class claim would be superior to other methods in this case. In line with the trial court's analysis, we note that concentrating this litigation as a single case in state court appears to be superior because common issues predominate, the alleged transactions occurred in Ohio, and violations of Ohio law are alleged. Regarding Appellants' argument about damages, managing these claims as a class action where

the hypothetical alternative is hundreds or thousands of individual lawsuits does not present any special difficulty that would make individual cases superior. *Cantlin*, 2018-Ohio-4607, 114 N.E.3d 1260, at ¶ 51.

**{¶ 89}** Having found that the trial court did not abuse its discretion in certifying the class pursuant to Civ.R. 23(B)(3), Appellants' third assignment of error is overruled.

**{¶ 90}** Judgment affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, JUDGE

EILEEN T. GALLAGHER, A.J., and
KATHLEEN ANN KEOUGH, J., CONCUR